STATE OF NORTH CAROLINA v. ARNOLD LORENZO PAIGE AND JAMES BERNARD LOWERY

No. 624A84

(Filed 3 June 1986)

**1. Criminal Law § 15— dismissal of charges—loss of exclusive venue**

A county which has acquired exclusive venue pursuant to N.C.G.S. § 15A-132(a) or (b) loses that exclusive venue when the criminal process upon which the exclusive venue is based is dismissed.

**2. Criminal Law § 13; Indictment and Warrant § 3— crimes in another county— no jurisdiction of grand jury**

The grand jury of Stanly County was without jurisdiction to indict defendants for offenses that occurred in Mecklenburg County where the indictments were returned prior to 1 July 1985, the effective date of N.C.G.S. § 15A-631.

**3. Criminal Law § 13; Indictment and Warrant § 3— allegations that crimes occurred in county—evidence showing crimes in another county**

Judgments for robbery must be arrested where the indictments returned by the grand jury in Stanly County alleged that the offenses occurred in Stanly County but the State's evidence conclusively showed that the offenses occurred in Mecklenburg County.

**4. Criminal Law § 92.1— joint trial—inability to call codefendant as witness—absence of prejudice**

Defendant was not prejudiced by a joint trial with his codefendant in a prosecution for sexual offense, kidnapping, larceny and robbery because he was thus unable to call his codefendant as a witness where the only suggestion that the codefendant could aid defendant in his defense was defense counsel's unsupported assertion that the codefendant had said that defendant was not present during the commission of the crimes.

**5. Criminal Law § 92.1— joint trial—pretrial identification of codefendant—absence of prejudice**

Defendant was not prejudiced by a joint trial with his codefendant because the victim had made a pretrial identification of the codefendant but not of defendant where the victim made in-court identifications of both defendants at trial.

**6. Criminal Law § 92.1— joint trial—evidence relating to only one defendant— limiting jury instruction—absence of prejudice**

A severance was not required because evidence was introduced that the codefendant was wearing a bracelet taken from the victim at the time of his arrest where the trial court instructed the jury that such evidence applied only to the codefendant and not to defendant.

**7. Criminal Law § 98.3— trial with ankle weights on defendants**

The trial court did not err in allowing defendants to be tried while wearing unobtrusive ankle weights where the trial court found upon supporting evidence that the restraints were necessary to prevent defendants' escape, and where the trial court took measures to prevent the jurors from observing the weights on defendants. N.C.G.S. § 15A-1031.

**8. Criminal Law § 98.3— restraints on defendants—reliance on evidence inadmissible at trial**

A trial judge may base his findings supporting the use of restraints upon reliable information which would not be admissible evidence at a trial, including hearsay testimony.

**9. Criminal Law § 102.2— opening statement by defense counsel—limitation by court**

The trial court's limitation of defense counsel's opening statement to the jury to "what you contend your evidence will show" did not sufficiently prejudice defendant's case to require reversal of his conviction. However, defense counsel should have been allowed to state once without interruption that his client would rely on the presumption of innocence and the State's burden to prove defendant's guilt beyond a reasonable doubt since the simple statement that defendant intends to rely on these basic aspects of a criminal prosecution would not amount to an argument on the law and may be necessary in order to apprise the jury of defendant's only defense when he does not plan to offer evidence. N.C.G.S. § 15A-1221(a)(4); Rule 9, General Rules of Practice for the Superior and District Courts.

**10. Criminal Law § 99.3— comments by trial judge—no expression of opinion**

The trial judge did not express an opinion on the evidence in commenting during cross-examination of the victim that "She said a few seconds," and "She's testified she said she did," or in stating, "That's all right," when the victim began crying during cross-examination.

**11. Criminal Law § 99.4— judge's sustaining of own objections**

The trial judge's actions in sustaining his own objections to questions by defense counsel did not amount to an abuse of discretion in exercising control over the conduct of the trial where the trial judge was correct in each instance in his determination that the question posed amounted to needless repetition.

**12. Criminal Law § 114.1— disparity in stating contentions of the parties**

The disparity in the trial court's recitation of the evidence for the State as opposed to evidence for defendants did not violate N.C.G.S. § 15A-1232 where the court's instructions fairly and accurately summarized the evidence and contentions of the parties.

**13. Criminal Law § 88— right of cross-examination not denied during voir dire**

Defendants were not denied their right of cross-examination during a voir dire hearing on the admissibility of the victim's in-court identification of defendants when the trial court ruled that a question as to how long the victim viewed her abductors in a parking lot when they first accosted her was suffi-

ciently answered by the victim's response of "a few seconds" and when the court refused to allow the victim to answer a question as to who told her to refer to one of her assailants as "Defendant Paige."

**14. Criminal Law § 66.19— admissibility of in-court identification—voir dire hearing—refusal to hear another witness**

The trial court did not err in refusing to permit defendant to call a witness during a voir dire hearing on the admissibility of the victim's in-court identification of defendants to testify about a lineup and the fact that the victim had not identified one defendant in the lineup where defense counsel had conceded that a pretrial lineup and photographic display had not been impermissibly suggestive, and the victim's testimony concerning her opportunity to observe her abductors showed that her identification of defendants was not inherently incredible, since testimony by another witness which cast doubt on the victim's identification would only have presented a jury question of credibility.

**15. Criminal Law § 66.20— admissibility of in-court identification—sufficiency of findings and conclusions**

The trial judge made adequate findings of fact and conclusions of law on the admissibility of the victim's identification testimony where no contention was made that pretrial procedures were unlawfully conducted or tainted the in-court identification, and where the trial judge made findings which fully supported his conclusion that the victim's identification of defendants as her assailants was not so inherently incredible as to require the court to suppress it.

**16. Criminal Law § 88.5— refusal to allow question for record during recess—no violation of due process**

Defendant's due process rights were not violated when the trial court refused to permit defendant's counsel to have the victim answer a question for the record during a recess when the court allowed the codefendant's counsel to have the victim answer for the record a question which the court had disallowed on recross-examination where there is no indication in the record what question defendant's counsel wanted answered, and where nothing in the record indicates that defendant's counsel conducted a recross-examination or asked to be allowed to preserve an answer to any question that he had posed to the victim.

**17. Criminal Law §§ 75.2, 75.7; Searches and Seizures § 8— confession to undercover officer—Miranda rules inapplicable—effect of trickery—search incident to arrest**

Defendant's right to receive *Miranda* warnings and his right to counsel did not apply to confession to an armed robbery made during a conversation with an undercover officer and a private citizen since defendant was not under arrest and was free to go at any time. Nor was the confession rendered involuntary because of trickery by the undercover officer since defendant testified that he admitted the robbery to make himself look good and not because of any coercion or duress, and since a defendant against whom no criminal proceedings have been initiated does not have a constitutional right to protection

against police tactics which merely amount to trickery. Therefore, the confession was sufficient to establish probable cause for defendant's arrest, and a bracelet in plain view, was properly seized from defendant as an incident of his valid arrest.

**18. Criminal Law § 34.5— evidence of another crime—competency to show identity**

In a prosecution for kidnapping and sexual offense, evidence that one defendant admitted an armed robbery of a theater in a conversation with an undercover officer was admissible to prove identity where there was evidence tending to show that the victim's abductors intended to commit an armed robbery, and the descriptions of the persons who committed the robbery were similar to the victim's description of her abductors. Furthermore, testimony brought out by defendant on recross-examination of the undercover officer cured any error which may have occurred because of the officer's testimony on redirect about defendant's participation in the robbery.

**19. Criminal Law § 40— evidence at prior hearing—availability of witness**

The trial court did not err in instructing the jury that the victim's testimony at the probable cause hearing could not be considered as substantive evidence where the victim was available and testified.

**20. Criminal Law § 111.1— instructions on effects of joinder**

When the court's instructions are considered as a whole, the court adequately and in substance gave instructions requested by defendants on the effects of joinder of defendants for trial.

**21. Criminal Law § 66— instruction on identification**

The trial court did not err in failing to give defendants' requested instruction on identification where the instructions given by the court on the issue of identification informed the jury that the burden of proving the identity of each defendant beyond a reasonable doubt was upon the State and that the jury must be satisfied beyond a reasonable doubt that each defendant was the perpetrator of each of the crimes charged before it could return a verdict of guilty as to that particular crime and that particular defendant.

**22. Criminal Law § 112— possession of stolen property—failure to instruct on presumption of ownership**

Where the jury in a rape, sexual offense, kidnapping and robbery trial was presented with positive evidence that a bracelet defendant was wearing when he was arrested had been taken from the victim, and where ownership of the bracelet was not the issue before the jury, the trial court did not err in refusing to give defendant's requested instruction that possession of the bracelet by defendant created a presumption that it was his.

**23. Criminal Law § 114.3— no expression of opinion in instruction**

An instruction that the jury was not to consider evidence of a bracelet worn by defendant "against" the codefendant did not constitute an improper comment on the evidence to the effect that the jury could consider such evidence against defendant. N.C.G.S. §§ 15A-1222 and 1232.

APPEAL by defendants from judgments entered by *Rousseau, Judge*, at the 11 June 1984 Session of UNION County Superior Court.

The defendants were tried on indictments charging each with first degree sexual offense, first degree kidnapping, felonious larceny of a motor vehicle, and two counts of common law robbery. In addition, defendant Paige was charged with first degree rape. The defendants pleaded not guilty to all charges. At the close of the State's evidence, the court granted a motion to dismiss the first degree kidnapping charges and submitted second degree kidnapping to the jury. The State took a voluntary dismissal of the charges of larceny of an automobile. The jury found the defendants guilty of all the remaining charges. The trial court sentenced Paige to two consecutive sentences of life imprisonment for first degree rape and first degree sexual offense, plus thirty years for second degree kidnapping. He imposed a concurrent sentence of three years for each count of common law robbery. Lowery was sentenced to consecutive sentences of life imprisonment for first degree sexual offense and twenty years for second degree kidnapping, and to a concurrent sentence of three years for each count of common law robbery. Paige appealed the rape conviction and both defendants appealed the sexual offense convictions to this Court as a matter of right under N.C.G.S. § 7A-27(a). On 21 March 1985 this Court allowed the defendants to bypass the Court of Appeals on their appeal from the kidnapping and common law robbery convictions. Heard in the Supreme Court on 14 October 1985.

*Lacy H. Thornburg, Attorney General, by Archie W. Anders, Assistant Attorney General, for the State.*

*Henry T. Drake for defendant-appellant Paige.*

*Charles Weaver Collini for defendant-appellant Lowery.*

BILLINGS, Justice.

The State's evidence tended to show that on 27 January 1984, the defendants kidnapped the victim at approximately 8:00 p.m. in Albemarle, Stanly County, drove her to another location in Stanly County where they robbed her of some jewelry and money, and then drove her to Mecklenburg County where the defend-

ant Paige raped her and where each defendant forced her to have oral sex. The defendants then robbed her of her remaining jewelry and left her in the trunk of her car. She was rescued by law enforcement officers at approximately 10:30 a.m. the next morning.

On appeal the defendants bring forward several assignments of error, most of which we find to be without merit. However, we conclude that because the Stanly County grand jury was without jurisdiction to indict defendant Paige for the rape and the first degree sexual offense and defendant Lowery for the first degree sexual offense, all of which were alleged and proved to have occurred in Mecklenburg County, judgment must be arrested in those cases. In addition, although the indictments alleged that the other offenses occurred in Stanly County, the proof established that one count of common law robbery against each defendant occurred in Mecklenburg County. Judgment must be arrested in those cases as well. We find no error requiring reversal of the remaining convictions.

## I.  Venue

The first assignment of error raised by the defendants is that their motions for change of venue to Mecklenburg County were improperly denied. The events in this case transpired in Stanly and Mecklenburg Counties on 27 January 1984. On 14 February 1984 warrants were issued in Mecklenburg County against Paige for first degree rape and common law robbery, and against Lowery for first degree sexual offense and common law robbery. Later that same day in Stanly County, warrants were issued against Paige for kidnapping, common law robbery, and felonious larceny of a motor vehicle and against Lowery for kidnapping, common law robbery, and felonious larceny of a motor vehicle. On 12 March 1984 the Stanly County grand jury indicted Paige for kidnapping, felonious larceny, and common law robbery (handbag, money and jewelry) and Lowery for kidnapping, common law robbery (handbag, money and jewelry) and felonious larceny. On 30 March 1984 the district attorney in Mecklenburg County took a voluntary dismissal of all the charges pending in that county against both defendants. On 2 April 1984 the Stanly County grand jury returned additional indictments against Paige charging him with first degree sexual offense, first degree rape, and a second

count of common law robbery (jewelry), and against Lowery for first degree sexual offense and a second count of common law robbery (jewelry).

The defendants twice moved for transfer of venue to Mecklenburg County. The first motions were filed in Stanly County on 19 March 1984. These motions (1) asked for change of venue pursuant to N.C.G.S. § 15A-957 on grounds of extensive pre-trial publicity in Stanly County, and (2) claimed exclusive venue in Mecklenburg County under N.C.G.S. § 15A-132(c). On 2 April 1984 Judge Wood ordered the cases transferred to Union County for trial because of the publicity in Stanly County. The order did not address the exclusive venue claim raised by the defendants. The defendants then moved for transfer from Union County to Mecklenburg County on the ground that Mecklenburg was the place where many of the alleged offenses occurred and was therefore the place of proper venue under N.C.G.S. § 15A-131.

Thereafter the trial judge concluded that Stanly and Mecklenburg Counties had concurrent "jurisdiction" of the offenses and that when the charges filed in Mecklenburg County were dismissed, Stanly County was the county of proper venue. Venue having been transferred from Stanly to Union County because of pre-trial publicity, the court ruled that Union County was a proper venue for trial and denied the motion to transfer.

[1]  The defendants' contentions require us to examine and apply N.C.G.S. § 15A-132 (1983) which provides as follows:

(a) If acts or omissions constituting part of the commission of the charged offense occurred in more than one county, each county has concurrent venue.

(b) If charged offenses which may be joined in a single criminal pleading under G.S. 15A-926 occurred in more than one county, each county has concurrent venue as to all charged offenses.

(c) When counties have concurrent venue, the first county in which a criminal process is issued in the case becomes the county with exclusive venue.

For some of the offenses, venue may have been concurrent in Stanly and Mecklenburg Counties under N.C.G.S. § 15A-132(a). It

is clear that venue for all offenses was concurrent in those coun-
ties pursuant to N.C.G.S. § 15A-132(b), for they all were "based on
a series of acts or transactions connected together or constituting
parts of a single scheme or plan" and thus could be joined in a
single criminal pleading according to the joinder rules of N.C.G.S.
§ 15A-926. The defendants contend that because the first criminal
process for an offense arising out of the series of acts or transac-
tions was issued in Mecklenburg County, that county became the
county with exclusive venue pursuant to N.C.G.S. § 15A-132(c),
and it was error for the trial court to refuse to grant their timely
motions to transfer the cases to Mecklenburg for trial. Before the
trial judge ruled on the first motion for change of venue, all
charges which had been filed in Mecklenburg County had been
voluntarily dismissed. Therefore the question becomes whether
the exclusive venue acquired pursuant to N.C.G.S. § 15A-132(c)
survived that dismissal. For the reasons set forth below, we hold
that a county which has acquired exclusive venue pursuant to
N.C.G.S. § 15A-132(a) or (b) loses that exclusive venue when the
criminal process upon which the exclusive venue is based is dis-
missed. We base our decision on this Court's treatment of a
similar situation involving prosecutions in courts with concurrent
jurisdiction under the system that existed in this State prior to
establishment of the Unified Court System in 1965. *See State v.
Clayton*, 251 N.C. 261, 111 S.E. 2d 299 (1959); *State v. Parrish*, 251
N.C. 274, 111 S.E. 2d 314 (1959); *State v. Rose*, 251 N.C. 281, 111
S.E. 2d 311 (1959); *State v. Moseley*, 251 N.C. 285, 111 S.E. 2d 308
(1959). The concurrent jurisdiction between the two courts in
question in these cases was created by N.C.G.S. § 7-64 which was
repealed in 1969 when court reform became fully implemented.
N.C.G.S. § 7-64 provided:

> In all cases in which by statute original jurisdiction of
> criminal actions has been, or may hereafter be, taken from
> the superior court and vested exclusively in courts of inferior
> jurisdiction, such exclusive jurisdiction is hereby divested,
> and jurisdiction of such actions shall be concurrent *and exer-
> cised by the court first taking cognizance thereof.*

(Emphasis added.)

Following a thoughtful analysis of cases on the question cited
in 117 A.L.R. 424 (1938), Justice (later Chief Justice) Parker said
in *State v. Clayton*:

It is our opinion, that when before trial a *nolle prosequi* was entered upon the record of the Recorder's Court of Vance County in the cases pending in that Court against the defendant, that Court lost jurisdiction, and that thereafter the State could institute and carry on an indictment and prosecution against the defendant for the same offenses in the Superior Court of Vance County, a Court of concurrent jurisdiction over these offenses with the Recorder's Court of Vance County, which opinion is in accord with the decisions of a large majority of the Courts deciding the same precise question, and with our decision of *S. v. McNeill* [10 N.C. 183 (1824)], and is a sound and better view.

251 N.C. at 272, 111 S.E. 2d at 307.

We believe that the same interpretation should be given to the provisions of N.C.G.S. § 15A-132 relating to concurrent and exclusive venue. The reason for the grant of exclusive venue to the first court in which charges are filed is "to prevent confusion and contentions between different courts, each seeking to exercise jurisdiction, . . . not to shield one accused of crime from prosecution when that court, in which the complaint may have been first lodged, had lost its [exclusive venue] by dismissal of the case." *Epps v. State*, 130 Tex. Crim. 398, 398-99, 94 S.W. 2d 441, 442 (1936).

In the case *sub judice*, because all charges in Mecklenburg County were dismissed prior to the hearing on the defendants' motion for change of venue, the judge did not err in refusing to transfer venue to Mecklenburg County.

This assignment of error is overruled.

## II.  Jurisdiction

[2]  The defendants next contend that the grand jury of Stanly County was without jurisdiction to indict them for the offenses that occurred in Mecklenburg County and that judgments entered upon the convictions for those offenses should be arrested. We agree.

In the recent case of *State v. Randolph*, 312 N.C. 198, 321 S.E. 2d 864 (1984), this Court held that a grand jury in one county has no power to return an indictment for a crime committed in

another county. Although the General Assembly, apparently in response to *Randolph*, has enacted N.C.G.S. § 15A-631 which provides that "the place for returning a presentment or indictment is a matter of venue and not jurisdiction," that statute became effective 1 July 1985 and does not apply to the indictments in this case,[1] which were returned in March and April of 1984.

The indictments charging defendant Lowery with first degree sexual offense and defendant Paige with first degree sexual offense and first degree rape were returned by the Stanly County grand jury but allege that the offenses occurred in Mecklenburg County. Under the authority of *Randolph*, judgments entered on those indictments must be arrested, as the indictments show on their face that the grand jury which returned them lacked jurisdiction over the offenses charged.

[3] Paige and Lowery were each charged with two counts of common law robbery. One bill against each defendant alleged robbery of the victim's handbag, money, and some jewelry; another bill against each defendant alleged robbery of other jewelry. All four indictments alleged that the robberies occurred in Stanly County. However, all of the evidence established and the jury's verdict reflected that the offenses charged in the two indictments alleging that only jewelry was taken occurred in Mecklenburg County.

In *Randolph* we noted that "[s]ince the statement in an indictment of the county where the crime allegedly occurred establishes *prima facie jurisdiction*, a challenge to this statement can be asserted at any time as stated in N.C.G.S. 15A-952(d)." *Id.* at 208, 321 S.E. 2d at 871. The defendants have raised the variance between the allegation of jurisdiction and the proof thereof in their appeal to this Court. We have examined the evidence presented at trial and find that there is no evidence which supports the allegation that these offenses occurred in Stanly County. Rather, the State's evidence conclusively shows that the offenses occurred in Mecklenburg County. Therefore, the State's own evidence rebuts the *prima facie* jurisdiction of the Stanly County

1. 1985 N.C. Sess. Laws Ch. 553, § 2 provides: "This act does not apply to pending prosecutions." 1985 N.C. Sess. Laws Ch. 553, § 4 provides: "This act is effective upon ratification." The act was ratified 1 July 1985.

grand jury to indict the defendants for the charges of common law robbery which occurred in Mecklenburg County, and the judgments entered against defendant Paige for common law robbery in case numbered 84CRS3127 (84CRS1697, Stanly County) and against defendant Lowery for common law robbery in case numbered 84CRS3125 (84CRS1695, Stanly County) must be arrested.

### III.   Challenge to Jury Panel

The defendants contend that the trial judge erred in failing to discharge the jury panel as being improperly and illegally drawn. Defendant Paige made a motion to quash the jury panel [properly a challenge to the jury panel under N.C.G.S. § 15A-1211(c)] and in his motion adopted the evidence and testimony heard by Judge Rousseau in *State v. Massey*, which was tried in Union County on 7 May 1984. Judge Rousseau presided over both the instant case and *Massey* and adopted his findings of fact and rulings in the *Massey* case to deny Paige's motion to quash the jury panel in the instant case. For the reasons stated in this Court's opinion in *State v. Massey* (No. 552A84, filed 6 May 1986), we find no error in denial of the challenge to the jury panel.

### IV.   Joint Trial

The defendants contend that the trial judge erred in allowing, over their objection, the State's motion to join the defendants for trial. The State filed a written motion pursuant to N.C.G.S. § 15A-926(b)(2) (1982) which provides:

Upon written motion of the prosecutor, charges against two or more defendants may be joined for trial:

a. When each of the defendants is charged with accountability for each offense; or

b. When, even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

1. Were part of a common scheme or plan; or

2. Were part of the same act or transaction; or

3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

Whether to allow a motion to join defendants for trial as authorized by statute ordinarily is addressed to the sound discretion of the trial judge. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985). "Absent a showing that a defendant has been deprived of a fair trial by joinder, the trial judge's discretionary ruling on the question will not be disturbed." *State v. Nelson*, 298 N.C. 573, 586, 260 S.E. 2d 629, 640 (1979), *cert. denied*, 446 U.S. 929, 64 L.Ed. 2d 282 (1980).

[4] Defendant Paige's written objection to joinder was based on the allegation that the victim had not identified Paige, and on the unsupported assertion that, in the absence of consolidation, Lowery could testify that Paige was not present during the commission of the crimes.

In oral argument to the trial judge on the motion, counsel for Paige did not rely upon his allegation that Paige would be deprived of his right to call Lowery as a witness if the joinder were allowed. Rather, he argued that because the victim had stated that two black men participated in the crimes but could only identify Lowery, having Paige tried jointly with Lowery would prejudice Paige.

In *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death penalty vacated*, 429 U.S. 809, 50 L.Ed. 2d 69 (1976) we held that the defendant had been prejudiced by a joint trial with his co-defendant in a prosecution for first degree murder because he was not able to call his co-defendant as a witness to bolster his alibi defense. The co-defendant had given a signed statement to the police admitting his own involvement in the crime and naming a person other than Alford as the person who killed the victim. He did not implicate Alford. The State chose not to introduce the co-defendant's statement at the joint trial because it would have weakened the State's case against Alford.

In the instant case, the only suggestion that Lowery could aid Paige in his defense was the unsupported assertion in the objection to joinder, signed by counsel for Paige, that "counsel is informed that suspect Lowery said that Arnold Lorenzo Paige was not present during any crime and could be a witness for Arnold Lorenzo Paige were the joinder not ordered." This is a far cry from a signed, sworn statement by a co-defendant admitting his own guilt and identifying some person other than the defendant

as the other guilty party. At the hearing before Judge Rousseau, no further effort was made to show that co-defendant Paige had made the statement which counsel for Lowery had been "informed" that he made. This bald assertion of hearsay information coupled with the theoretical possibility that Lowery "could be a witness" for Paige in the absence of joinder is insufficient to show that the defendant was in fact deprived of an opportunity to present his defense.

With respect to Paige's assertion that Lowery could exculpate Paige, the State introduced the testimony of a Trailways bus driver that Paige and Lowery rode his bus from Charlotte to Albemarle on the afternoon of 27 January 1984, the date of the alleged offenses, and an acquaintance of Paige's testified that he saw Paige and Lowery together on the streets of Albemarle at about 5:30 p.m. on that day.

[5] Regarding Paige's argument that a joint trial with his co-defendant who had been identified by the witness would constitute prejudice to the defendant who was not so identified, we note that during her testimony on *voir dire* the victim stated that she had selected Paige's photograph from a six-photograph array and had tentatively identified him in a line-up, although she had not made a positive identification at either time. The line-up was comprised of Paige and five black males selected by him from the inmate population in the Mecklenburg County Jail on the basis of their physical similarity to the defendant. The victim made an in-court identification of both defendants at trial. Therefore, the basis for defendant Paige's objection to joinder, that he would be associated in the jury's mind with the co-defendant whom the victim identified even though she was unable to identify the defendant, simply did not materialize.

Defendant Lowery's objection to joinder alleges that

a piece of physical evidence to wit: a 14-carat white gold serpentine bracelet allegedly belonging to the victim was found in the possession of the codefendant, ARNOLD LORENZO PAIGE, which arguably may be admitted into evidence at trial against the codefendant, PAIGE; that no cautionary instruction by the Court to the jury could cure the prejudicial and detrimental effect that the admission of the afore-mentioned

evidence would have against the defendant, JAMES BERNARD LOWERY.

[6]  When he was arrested on a different charge, the defendant Paige was wearing a serpentine bracelet which the victim identified as the one taken from her on the night of 27 January 1984. The bracelet and the circumstances surrounding its seizure from Paige were introduced into evidence, at which time the trial judge instructed the jury:

> Members of the jury, this bracelet is introduced solely as you might find it applies to the defendant Paige. It has nothing to do with the defendant Lowery.

If we were to agree with the defendant Lowery that the introduction of the above-referenced evidence required a severance of the defendants' trials, we would in effect be ruling that co-defendants may not be joined for trial in this state. It would be unusual for all evidence at a joint trial to be admissible against both defendants, and we often rely on the common sense of the jury, aided by appropriate instructions of the trial judge, not to convict one defendant on the basis of evidence which relates only to the other. *See, e.g., State v. Rinck,* 303 N.C. 551, 280 S.E. 2d 912 (1981).

As this Court said in *State v. Nelson,* 298 N.C. 573, 586, 260 S.E. 2d 629, 639 (1979), *cert. denied,* 446 U.S. 929, 64 L.Ed. 2d 282 (1980), "public policy strongly compels consolidation as the rule rather than the exception" when each defendant is sought to be held accountable for the same crime or crimes. In *Nelson* we recognized that limiting instructions ordinarily eliminate any risk that the jury might have considered evidence competent against one defendant as evidence against the other.

We find that the trial judge did not abuse his discretion in allowing the State's motion to join the defendants for trial.

## V.   Restraints During Trial

[7]  Defendants next argue that the trial judge committed prejudicial error by allowing them to be tried while wearing ankle weights. In *State v. Tolley,* 290 N.C. 349, 226 S.E. 2d 353 (1976), we held that it was not error for a defendant to be tried in shackles when there was a sufficient showing that under the cir-

cumstances the restraints were necessary. We did emphasize that shackles are inherently prejudicial to the defendant and should not be used without justification. We recommended certain procedures for insuring that, when shackles were used, the record supporting their use would be sufficient to permit appellate review of the trial judge's determination of necessity.

N.C.G.S. § 15A-1031 (1983) incorporates our holding in *Tolley* as follows:

> A trial judge may order a defendant or witness subjected to physical restraint in the courtroom when the judge finds the restraint to be reasonably necessary to maintain order, prevent the defendant's escape, or provide for the safety of persons. If the judge orders a defendant or witness restrained, he must:
>
> (1) Enter in the record out of the presence of the jury and in the presence of the person to be restrained and his counsel, if any, the reasons for his action; and
>
> (2) Give the restrained person an opportunity to object; and
>
> (3) Unless the defendant or his attorney objects, instruct the jurors that the restraint is not to be considered in weighing evidence or determining the issue of guilt.
>
> If the restrained person controverts the stated reasons for restraint, the judge must conduct a hearing and make findings of fact.

In accordance with the statute, the trial judge informed the defendants and their counsel and made an entry in the record out of the presence of the jury that the restraints were necessary to prevent the defendants' escape. The trial judge conducted a hearing, and Deputy Rollins of the Union County Sheriff's Department testified as follows:

> Information was relayed to me last week that they almost escaped previously en route to the hospital, that one of them purposely told the deputy to look at a woman walking across the yard, and when the deputy turned to look at her, his intention was to get the gun while the other man was getting

the prescription filled in the drugstore, and their intentions was [sic] to grab a deputy's gun, or officer's gun, while en route to the courtroom to escape.

[8]    When asked about the source of his information, Deputy Rollins said it came from the chief jailor. Although Deputy Rollins' testimony would not have been admissible at trial because based upon hearsay, we hold that a judge may base his findings supporting the use of restraints upon reliable information which would not be admissible as evidence at a trial.

The trial judge noted that the defendants' pants legs "about cover up those weights around the ankles of both defendants." He made the following findings of fact which we find justify the use of the unobtrusive ankle weights:

Let the record show that upon this motion the Chief Deputy Sheriff of this county says he had information that these defendants, if they got a chance, would would [sic] grab a gun and attempt to escape; that the Sheriff this week got a new type of leg weight, apparently has a lock to it, that wraps around the legs, that it is dark in color, looks like it is made of cloth and possibly one leather strap around it; that both defendants are now sitting in the court with those weights around each of their legs; that in the court's opinion based on the Sheriff's information and the fact that these two defendants will be sitting at the counsel table primarily behind counsel and between the State's counsel and the jury, and due to the fact that the court intends to have all persons in the courtroom before the jury comes in and excuse the jury before other persons are excused, I do not think the jury will notice anything around either of the defendant's legs. If they do, without some comment from the attorneys, I do not think a jury would associate that type of wrappings around a person's leg as being shackles or leg chains.

. . . .

Now, in the event one or both of them want to testify, we'll then at that time take some other steps.

The defendants did not testify before the jury and there is no indication in the record that the trial judge did not follow the pro-

cedure which he outlined in his findings to prevent the jurors' observing the defendants' heavy gait caused by the weights.

In their brief to this Court, the defendants argue that the judge failed to instruct the jury in accordance with the statute that the restraint was not to be considered in weighing the evidence and determining guilt. The defendants made no objection at trial to the failure to instruct and did not include in the record on appeal an assignment of error on this point. They have therefore failed to preserve the issue for appellate review. N.C. R. App. P. 10(b)(2).

This assignment of error is overruled.

## VI.   General conduct of the trial

The defendants next contend that by his interruptions during defendants' opening statements, comments during the course of trial, *sua sponte* rulings preventing answers to defendant's questions on cross-examination of State's witnesses, and disparity in the length of time devoted in his charge to recapitulation of the defendants' evidence as compared with that of the State, the trial judge expressed an opinion regarding the case in violation of N.C.G.S. § 15A-1222 (1983).

[9] The defendants first challenge the manner and extent to which the trial judge limited their opening statements to the jury. Only the opening statement of counsel for defendant Paige is set out in the record, however, and we consider only his assignment of error on this point.

N.C.G.S. § 15A-1221(a)(4) (1983) provides that in a criminal jury trial "[e]ach party must be given the opportunity to make a brief opening statement . . . ." Nothing in the statute defines the scope of the opening statement. The official commentary to N.C.G.S. § 15A-1221 notes that the drafting commission

determined that the initial speech by the judge telling the jurors about the case, under G.S. 15A-1213, plus opening statements of the parties would be a far superior method of telling the jurors about the case and what to look and listen for [than the previous method of reading the indictment and other pleadings].

Rule 9 of the General Rules of Practice for the Superior and District Courts also provides for an opening statement:

At any time before the presentation of evidence counsel for each party may make an opening statement setting forth the grounds for his claim or defense.

The parties may elect to waive opening statements.

Opening statements shall be subject to such time and scope limitations as may be imposed by the court.

This rule limits the purpose of the statement to that of "setting forth the grounds" of a claim or defense, which we interpret to mean stating the evidence upon which the claim or defense is based.

The State elected to waive its opening statement.

Prior to the defendants' opening statements, the trial judge limited the statements as follows:

You may only state what you contend your evidence will show. You may not comment on what the other party's evidence does or does not show. You may not characterize any witness. You may not comment on what the other lawyer may or may not argue. You may not argue the law, solely and simply what you contend your evidence will show. I'll limit it to five minutes per person.

Counsel for defendant Paige introduced himself to the jury and stated: "The fact that Mr. Paige has been accused, the Court will instruct you, is no evidence of guilt." The trial judge interrupted him and admonished him not to "argue the law to them." Thereafter the trial judge interrupted defense counsel after almost every other sentence as defense counsel attempted to argue that the jurors were to decide the case beyond a reasonable doubt and would be required to make some findings of fact, that the defendant had no burden of proof and that the State had the burden of proof on the question of identification.

This Court has not had occasion to construe N.C.G.S. § 15A-1221(a)(4) with respect to the scope of the statement authorized. In *State v. Elliott*, 69 N.C. App. 89, 93, 316 S.E. 2d 632, 636, *disc.*

*rev. denied, appeal dismissed,* 311 N.C. 765, 321 S.E. 2d 148 (1984), our Court of Appeals said:

> While the exact scope and extent of an opening statement rest largely in the discretion of the trial judge, we believe the proper function of an opening statement is to allow the party to inform the court and jury of the nature of his case and the evidence he plans to offer in support of it. *See generally,* 23 A [sic] C.J.S., *Criminal Law,* § 1086 (1961). It should not be permitted to become an argument on the case or an instruction as to the law of the case.

This statement is consistent with the scope of the opening statement as it is generally understood. *See* Annot. "Prosecutor's Opening Statement," 16 A.L.R. 4th 810 (1982); 75 Am. Jur. 2d, *Trial,* § 204 (1974). Even if the defendant does not intend to offer evidence, he may in his opening statement point out to the jury facts which he reasonably expects to bring out on cross-examination. When counsel for defendant Paige limited his statement to expected testimony that the victim was unable to identify his client in pre-trial identification procedures, he was allowed to fully state his contentions.

We feel that defense counsel should also have been allowed to state once without interruption that his client would rely on the presumption of innocence and the State's burden to prove the defendant's guilt beyond a reasonable doubt. While this statement is one of legal presumption and proof, the simple statement that the defendant intends to rely on these basic aspects of a criminal prosecution would not amount to an argument on the law and may be necessary in order to apprise the jury of the defendant's only defense when he does not plan to offer evidence.

While the trial judge in this case may have more strictly supervised the defendant's opening statement than is done in most trials, we are unable to say that the limitations he imposed sufficiently prejudiced the defendant's case to require reversal of his conviction. They were consistent with the trial judge's original admonition, and the number and frequency of the trial judge's interruptions to enforce his stated limitations were the result of counsel's violation of those limitations.

[10]   The defendants also argue that the Court's "numerous prejudicial comments" had the effect of "discrediting defense counsel to the prejudice of the defendants." The comments about which the defendants complain are illustrated by the following exchanges which occurred during cross-examination of the victim by defense counsel:

A. I observed them standing there a few seconds out of the corner of my eye.

Q. How long is a few seconds?

OBJECTION.

COURT: She said a few seconds.

SUSTAINED.

. . . .

Q. The truth is, [victim], that you testified under oath in court that you looked at a photo lineup with 6 people in it and that you picked out two individuals, neither one of which was Mr. Paige or Mr. Lowery, is that the truth?

OBJECTION. SUSTAINED.

COURT: She's testified she said she did.

The defendants especially emphasize the following occurrence during cross-examination of the victim as being unduly prejudicial to their case.

Q. [Victim], did Mrs. Taylor also tell you to tell this jury that you were 5 foot 6 inches tall?

A. No, she didn't (witness crying). I'm testifying to the best of my ability, the best I can do, and I'm telling the truth to the best of my ability. I have not been told what to say. I am saying what I know inside of me.

COURT: All right. That's all right.

We fail to see a basis for a claim that these comments or similar ones amounted to a prejudicial comment by the trial judge regarding the evidence in this case. *See State v. Mansell*, 192 N.C. 20, 133 S.E. 190 (1926); *State v. Laxton*, 78 N.C. 564 (1878);

*State v. Grant,* 19 N.C. App. 401, 199 S.E. 2d 14, *appeal dismissed,* 284 N.C. 256, 200 S.E. 2d 656 (1973).

[11] Defendants next contend that the trial judge injected himself into the prosecution of the case by sustaining objections "on his own initiative." In each instance when the trial judge excluded evidence *sua sponte,* the basis for his action was either that the examiner had already asked the same question and received an answer or that the inquiry was beyond the scope of permissible examination during re-cross. The trial judge has an obligation to see that needless time is not wasted in useless repetition in the presentation of evidence. *State v. McDougall,* 308 N.C. 1, 301 S.E. 2d 308, *cert. denied,* 464 U.S. 865, 78 L.Ed. 2d 173 (1983). The number of times that a trial judge may find it necessary to prohibit answers without objection depends upon how often repetitious questions are asked and whether opposing counsel voices an objection. Therefore, the determination of prejudice must be made, not by counting occurrences, but by reviewing the record with an awareness of the appropriateness of the ruling and the likelihood that the judge's action created an appearance to the jury of partiality on the trial judge's part. We have reviewed the record and find that in each instance the trial judge was correct in his determination that the question posed amounted to needless repetition and that the trial judge's actions did not amount to an abuse of his discretion in exercising control over the conduct of the trial.

[12] In addition, under this assignment of error defendants contend that the disparity in the recitation of the evidence for the State as opposed to evidence for the defendants violated N.C.G.S. § 15A-1232.[2]

This Court has pointed out that when a defendant offers no evidence or very little evidence at trial, recapitulation of the evidence for the State must necessarily take longer than recapitulation of evidence for the defendant and that such difference does not alone violate the trial judge's obligation under N.C.G.S. § 15A-1232 to "not express an opinion whether a fact has been

---

2. The statute was amended effective 1 July 1985, to provide that the judge "shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." N.C.G.S. § 15A-1232 (Cum. Supp. 1985).

proved." *State v. Smith*, 305 N.C. 691, 292 S.E. 2d 264, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982). We have reviewed the instructions of the trial judge and find that they fairly and accurately summarize the evidence and contentions of the parties.

Finally, the defendants claim that the cumulative effect of the trial judge's rulings "leaves but one impression, that is a judicial leaning toward the prosecution and an antagonistic attitude toward the defense."

We have reviewed the entire record and have concluded that, although the trial judge may have ruled against the defense more often than against the prosecution, these rulings were the result of more frequent repetitive questioning on the part of defense counsel and their failure to comply with limitations on the conduct of the trial, limitations which the trial judge had the authority and responsibility to impose in the interest of expediting the trial. *See State v. Anderson*, 303 N.C. 185, 278 S.E. 2d 238 (1981).

This assignment of error is overruled.

## VII.  Victim Identification

The defendants next contend that the trial judge erred in refusing to allow cross-examination and the presentation of evidence at the *voir dire* hearing on admissibility of the victim's in-court identification and in failing to make sufficient findings of facts and conclusions of law to support his order allowing the identification.

The basis of defendant Paige's objection to the victim's in-court identification was that she did not have sufficient opportunity to observe her abductors, thereby making her identification inherently unreliable. No claim was made that the in-court identification was tainted by an impermissibly suggestive or unconstitutionally conducted pre-trial identification procedure.

[13]  During direct examination by the State at a *voir dire* hearing, the victim said that the only time she "really got a good view" of her abductors was when she saw them coming toward her in the parking lot. In response to a question by the trial judge, she said she was in close proximity to her abductors for 30 to 45 minutes after they put her in the car, but stated that she did not look directly at their faces because of their threats. Later

she stated that she looked at their faces when they put her into the trunk, and she saw their faces when they took her out of the trunk in Charlotte.

On cross-examination of the victim by counsel for defendant Paige, the following exchange occurred regarding the victim's view of the abductors in the parking lot when they first accosted her:

Q. . . . How long did you look toward them?

A. Few seconds.

Q. 10 seconds, 15 seconds, 5 seconds, 2 seconds?

Mr. Lowder: We object to that type of question.

Court: You didn't give her time to answer.

Q. How many seconds?

Court: She said a few seconds.

Later the trial judge did not allow the victim to answer Mr. Drake's question: "By the way, who told you to refer to Mr. Paige as Defendant Paige?"

Both defense counsel conducted extensive cross-examination of the victim on *voir dire*, and they point only to these two rulings as impinging upon the defendants' right of cross-examination. The scope of cross-examination rests largely within the discretion of the trial judge. *State v. Ziglar*, 308 N.C. 747, 304 S.E. 2d 206 (1983). We hold that the trial judge did not abuse his discretion by these two rulings on *voir dire*, nor did the rulings, singly or together, amount to a denial of the right of cross-examination.

[14] Defendant Paige also contends that the trial court committed reversible error by not allowing him to put on evidence relating to the identification. The record discloses that after the defendant Paige had testified and counsel had conceded that a pre-trial lineup and a photographic display had been not impermissibly suggestive, the Court denied counsel's request to call a witness "to testify about the lineup" and the fact that the victim had not identified defendant Paige in the lineup. In support of his ruling, the trial judge concluded that, based upon the victim's testimony regarding her opportunities to observe the defendants,

her identification was not "totally unreliable." This ruling was not error.

As this Court said in *State v. Green*, 296 N.C. 183, 188, 250 S.E. 2d 197, 200-201 (1978):

> The credibility of a witness's identification testimony is a matter for the jury's determination, *State v. Orr*, 260 N.C. 177, 132 S.E. 2d 334 (1963); *State v. Bowman*, 232 N.C. 374, 61 S.E. 2d 107 (1950), and only in rare instances will credibility be a matter for the court's determination.

In *Green*, Justice Moore analyzed the case of *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967) in which this Court had found the identification of the defendant by the sole eyewitness inherently incredible and insufficient to justify submission of the question of defendant's guilt to the jury. The witness in *Miller* testified that he had gotten only a momentary look at the perpetrator, a stranger to him, from 286 feet away, at night, aided by lights around a building and the headlights of a passing automobile. Following his analysis of the cases, Justice Moore said: "[o]nly if there is a finding that the identification testimony 'is inherently incredible because of undisputed facts . . . as to the physical conditions under which the alleged observation occurred,' *State v. Miller, supra*, should defendant's motion to suppress be allowed." 296 N.C. at 189, 250 S.E. 2d at 201.

Given the victim's testimony in this case concerning her opportunity to observe her abductors, her identification of the defendants was not inherently incredible. Thus, even if some other witness had presented evidence which cast doubt on the victim's identification, the only effect would have been to make the facts surrounding her observation disputed, thereby presenting a jury question of credibility.

[15] Finally, defendants contend that the trial judge failed to make adequate findings of facts and conclusions of law on the admissibility of the victim's identification testimony.

Since no contention was made that pre-trial procedures were unlawfully conducted or tainted the in-court identification, findings of facts and conclusions of law regarding the independence of the identification were not required. *State v. Green*, 296 N.C. 183, 250 S.E. 2d 197. Nevertheless, the trial judge made findings which

fully supported his conclusion that "the prosecuting witness' identification of these two defendants as her attackers was not so inherently incredible as to require the court to suppress it."

Objection to the victim's identification of the defendants in court was properly overruled.

## VIII.   Defendant Lowery's right to preserve testimony

[16]  Defendant Lowery contends that his rights under the due process clause of the fourteenth and sixth amendments to the United States Constitution were violated when the trial judge refused a request by Lowery's counsel to be allowed to ask a question of the victim and have her answer made a part of the record.

The victim was called to testify on behalf of the State. Following direct examination she was cross-examined first by Mr. Drake, representing defendant Paige, and then by Mr. Collini, representing defendant Lowery. The State then examined her on redirect and Mr. Drake conducted a recross-examination, during the course of which he asked a question which the trial judge would not allow her to answer because he found the question not to be in rebuttal. Upon request by Mr. Drake, the trial judge allowed the witness to answer the question for the record during a recess. After the witness had answered, Mr. Collini stated that he, too, had a question. The trial judge refused to allow the question on the basis that counsel had not asked to preserve an answer to any question that was disallowed during his examination.

Nowhere is there any indication what question Mr. Collini wanted answered. The record indicates that the recess occurred during cross-examination by Mr. Drake and that the purpose for questioning out of the jury's presence was to comply with Mr. Drake's request to be allowed to have the witness' answer put in the record. At one point during his own cross-examination, Mr. Collini was given an opportunity to be heard out of the jury's presence regarding a ruling on an objection by the State. Nothing in the record indicates that Mr. Collini conducted a recross-examination or asked to be allowed to preserve an answer to any question that he had posed to the witness.

We find this assignment of error to be totally without merit.

IX.   Defendant Paige's objection to introduction of bracelet

Although defendant Paige's argument on this issue is poorly focused in his brief, it appears that his objection is to the adequacy of the *voir dire* hearing on admissibility of a bracelet. The bracelet was seized from Paige at the time of his arrest on 10 February 1983 on an unrelated charge of armed robbery.

The testimony of the State's witnesses on *voir dire* supported findings made by the trial judge as follows:

> That on February 10th Officer Garnes got another officer and a private citizen of Stanly County to meet with the defendant Paige; that during this meeting Officer Kearney had a mike and that the conversation was recorded by Officer Garnes; that during the course of the conversation between the undercover agent, the private citizen, and the defendant Paige, by the officer's efforts liquor was obtained, wine was obtained, marijuana was obtained; that the undercover agent and the private citizen stated they had just done a lick, to wit, an armed robbery; that they also talked about having sex with other persons; that at that time the defendant Paige was a suspect in the armed robbery and the alleged rape and kidnapping; that Officer Garnes wanted to obtain information from the defendant Paige and the one that instigated the undercover activity; that during the course of the conversation between the undercover agent and the defendant, the defendant admitted that he had robbed the theater on Saturday night; that this was sometime during the late afternoon of February 10th; that pursuant to this statement by the defendant that he had robbed the theater, Officer Garnes then placed the defendant under arrest; that when the officer told the defendant to place his hands on top of the vehicle, Officer Kearney noticed a gold bracelet on the defendant's wrist, and it appeared to fit the description of the bracelet taken from the victim in this case.

[17]   The defendant contends that his arrest was illegal because it was based upon an illegally obtained confession to the armed robbery and that, as a result, the bracelet seized pursuant to the arrest was unlawfully seized. The defendant attempted to introduce into evidence during *voir dire* the tape recording referred

to by Officer Garnes during his testimony. The trial judge excluded the tape, saying:

I don't see that has one thing to do with your motion to suppress. The officer admitted that they went out and talked to him, they gave your client liquor, they bought marijuana for him. To hear what exact words was said I don't see it has any bearing whatsoever on the motion to suppress.

The defendant Paige testified at the hearing, basically corroborating the account of the events preceding his arrest as related by the State's witnesses. He said that he had not in fact committed the robbery, but that he said he had because:

I wanted it to seem if [sic] I had committed a robbery because they were making themselves look good as if they was actually outlaws, doing crimes and things, and I had heard the theater had been robbed and I wanted to make myself look good, you know. I wanted to be a big man, just like they were. They didn't prompt me to admit that particular robbery. It was my idea.

The thrust of the defendant's argument at trial and here is that his confession was obtained without *Miranda* warnings, after suspicion had focused on him, and in violation of his right to counsel. The defendant further contends that "[a]ny statement given by the defendant must be freely and intelligently given without coercion, duress or fraud."

We hold that the trial judge did not err in refusing to allow introduction of the tape recording and in denying the defendant Paige's motion to suppress the bracelet.

Given the situation described by all witnesses, including the defendant, neither the defendant's right to receive warnings prior to custodial interrogation, *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966), nor his right to assistance of counsel when the State seeks to elicit incriminating information following arrest, *United States v. Henry*, 447 U.S. 264, 65 L.Ed. 2d 115 (1980), was implicated. The trial judge was correct in concluding that nothing contained in the recording would bear upon any question raised by the defendant regarding the application of *Miranda* or *Henry*, for the State admitted that no warnings were given be-

fore and the defendant did not have counsel at the time of his confession. Neither was required, for, as the trial court concluded:

> [A]t no time during the conversation between the defendant and the undercover agent and the private citizen was the defendant under arrest; . . . he was free to go at any time he wanted to, but . . . the defendant voluntarily remained in the presence of the undercover agent.

On the further question of whether the confession was obtained by "coercion, duress or fraud," we note that the defendant himself testified that he admitted to the robbery to make himself look good, not because of any coercion or duress. Furthermore, a defendant against whom no criminal proceedings have been initiated does not have a constitutional right to protection against police tactics which merely amount to trickery. *Hoffa v. United States*, 385 U.S. 293, 17 L.Ed. 2d 374 (1966). *See also State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983). The defendant is not, by the assignments of error directed to this issue, objecting to the introduction of his confession into evidence before the jury. The confession was clearly sufficient to establish probable cause justifying the defendant's arrest. The bracelet was seized in plain view during the course of a valid arrest; therefore, it was admissible against the defendant at his trial upon a showing of its relevancy in the instant case. *State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977).

### X.  Evidence of another criminal act
### committed by defendant Paige

[18]  Following the *voir dire* hearing relating to the admissibility of the bracelet seized from the defendant Paige and after the State completed its direct examination of Officer Garnes, counsel for Paige cross-examined Officer Garnes. In the course of the cross-examination, he elicited testimony about the recorded conversation immediately preceding Paige's arrest. Officer Garnes answered several questions posed by defense counsel regarding statements made by Paige during that conversation about whether Paige had ever had sex with a white woman. Officer Garnes indicated that Paige did not implicate himself in the rape of the victim in this case.

On redirect the district attorney asked: "Would you tell us, please, all that you recall Paige saying on February 10th, 1984 . . . at the time you were listening through the body mike worn by Officer Kearney?" The defendant's objection was overruled after the district attorney observed that "[h]e's opened the door." Officer Garnes responded that Paige admitted to committing a robbery of a theater, the Plaza Theater on Central Avenue.

In his assignment of error, the defendant does not contend that the statement was illegally obtained; he argues that this evidence of another criminal offense was irrelevant and served only to excite prejudice.

These cases were tried at the 11 June 1984 Session of Union County Superior Court and are thus governed by evidentiary rules applicable prior to the 1 July 1984 effective date of the North Carolina Rules of Evidence.[3]

The rule that evidence of other offenses is inadmissible against a criminal defendant to prove his guilt of the crime charged does not prevent use of such evidence if it is relevant for some other purpose. 1 *Brandis on North Carolina Evidence* §§ 91, 92 (1982). One such purpose is to prove identity where there is evidence that the same person committed the charged offense and the other offense. *State v. Perry*, 293 N.C. 97, 235 S.E. 2d 52 (1977). In the case *sub judice* the victim testified that the defendants told her during the time she was in the car with them that they were going to "be in an armed robbery."

On recross-examination of Officer Garnes by counsel for defendant Paige, the witness was questioned extensively about the conversation preceding the defendant's arrest and, among other things, stated:

> The only thing the theater has to do with this case, is that two suspects in the Albemarle rape [the instant case] and the Plaza Theater robbery were similar in description and since they made reference to the rape victim, that they were going to pull a robbery the night that she was kidnapped, checking times and the times that they had left Albe-

---

3. We note that admissibility of this evidence now would be controlled by N.C.G.S. § 8C-1, Rule 404(b).

marle and checking the time the theater closed, it would have been impossible for them to rob the theater that night, so I started the investigation for the rape and robbery for the same suspects, sir.

Paige was charged with that robbery in Charlotte and I don't know if the charges have been dismissed. We conducted a lineup for the man at the theater and Paige was in that. He picked out Mr. Paige and said that Paige was the person that looked like the robber with the exception of his hair. His hair was different from the robber's.

All of this testimony, brought out by the defendant on recross-examination, was given without objection and cures any error which may have occurred in the witness' mentioning the robbery on redirect. *State v. Murray*, 310 N.C. 541, 313 S.E. 2d 523 (1984). Further, it established the relevancy of the testimony regarding defendant Paige's participation in the robbery, for there was prior evidence tending to show that the victim's abductors intended to commit an armed robbery, and the description of the persons who committed the robbery was similar to the description by the victim of her abductors. *See State v. Perry*, 293 N.C. 97, 235 S.E. 2d 52.

This assignment of error is overruled.

## XI.   Instructions

Finally, the defendants contend that the trial judge erred in his instructions to the jury as follows:

A. He instructed the jury that they did not have to consider the truth of prior statements made under oath.

B. He failed to properly instruct the jury on the effect of joinder of the defendants for trial.

C. He failed to give proper instructions on the identification of the defendants.

D. In regard to defendant Paige, he failed to give requested instructions relating to the defendant's possession of the bracelet.

A.

[19] Without citing any authority for their position, the defendants first argue that the trial judge erred when he instructed the jury that they could not consider pre-trial statements of the victim "as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial"; i.e., it could not be used substantively. The victim had been cross-examined about her testimony under oath at the probable cause hearing where she testified about her opportunities to observe her abductors. At that time she admitted that she did not notice anything unusual about their facial features or any distinguishing jewelry. She also related testimony she had given about lighting at the various locations where she was in the presence of her abductors.

No objection to the instruction was made at the time it was given, but the defendant contends that the instruction amounts to plain error. *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

The rule regarding the use of testimony of a witness at a former judicial hearing as it existed prior to 1 July 1984[4] is set out in 1 *Brandis on North Carolina Evidence* § 145 (1982). In order for the former testimony to be admissible substantively, the witness must be unavailable. Here, the witness was available and testified. Therefore, unless it satisfied some other exception to the hearsay rule, her former testimony was admissible only for purposes of corroboration or impeachment, and the trial judge's instruction was correct. The defendant points to no other basis for a substantive use of the previous testimony. There being no error in this instruction, it cannot constitute plain error.

B.

[20] The defendants next challenge the trial court's instruction on joinder.

Prior to the jury instructions in this case, the defendants filed written requests for instructions which included the following:

4. N.C.G.S. § 8C-1, Rule 804(b)(1) provides that former testimony meeting certain requirements is an exception to the hearsay rule if the declarant is unavailable as a witness.

I instruct you, members of the jury, that the defendants have been joined for the purpose of trial, and for that purpose, only. The fact that they have been joined for trial is not to be considered by you as having any bearing on their guilt or innocence. You are to consider and evaluate the evidence as that evidence relates to each defendant, individually. During the course of this trial, the State has offered evidence, and you are to use your own recollection of that evidence, which relates solely to one of the defendants and to that defendant, only. You are not to consider such evidence as relating to both the defendants merely because they have been joined for the purpose of trial.

The trial judge instructed the jury on the effect of joinder as follows:

Now, members of the jury, as I have said, defendant Paige has been charged with five separate crimes, and the defendant Lowery with four separate crimes.

Now, each of these defendants is tried individually. You cannot convict one merely because you convict the other. You have to consider separate and apart as to each defendant in each of these charges.

The verdict sheets were submitted to the jury in two groups, and the trial judge instructed the jury: "There are two groups of papers, one applies to the defendant Paige, one to the defendant Lowery."

As his final instruction, the trial judge said:

Now, members of the jury, as I have said, all nine of these are separate cases, each defendant an individual defendant. Those elements I named to you must be applied before you find the defendant guilty to each of those defendants separate and apart. Again just because you find one defendant guilty maybe does not necessarily mean the other defendant is guilty and vice versa. You may find the defendant or any one guilty on any charge, and find not guilty on any other charge. In other words one verdict does not depend on the outcome of the other verdict. Certainly does not apply to the other defendant.

Also, members of the jury, during the course of the trial some evidence [sic] introduced about a bracelet being found on the defendant Paige. I instructed you at that time and again at this time that you are not to consider that against the defendant Lowery.

During the course of the trial the trial judge gave instructions on the use of evidence admissible against only one of the two defendants when the evidence was received. When the serpentine bracelet seized from defendant Paige was received into evidence, the trial judge instructed the jury:

Members of the jury, this bracelet is introduced solely as you might find it applies to the defendant Paige. It has nothing to do with the defendant Lowery.

In addition, the trial judge instructed the jury concerning the specific charges against each defendant. He was specific with regard to the facts which the jury would have to find in order to convict each defendant of each crime.

Defendants contend that the trial judge erred in refusing to instruct as they requested and that the instructions as given were erroneous and prejudicial.

It is well established in this jurisdiction that the trial judge is not required to give a requested instruction in the exact language of the request, even if the request is a correct statement of the law and supported by the evidence, if the requested instruction is given in substance. *State v. Corn,* 307 N.C. 79, 296 S.E. 2d 261 (1982). When considered as a whole, the instructions of the trial judge adequately and in substance instructed the jury on the point requested by the defendants and were in every respect correct.

This assignment of error is overruled.

C.

[21] The defendants next assign as error the trial judge's instructions on identification of the defendants and his failure to give their requested instruction on identification.

Defendant Lowery filed a request for instructions which contained the following: "In addition, the defendant requests an in-

struction on eyewitness identification, as attached and as if fully incorporated herein." Attached to the request are pages 558 and 559 from the opinion in *United States v. Telfaire*, 469 F. 2d 552 (D.C. Cir. 1972) which contain "Model Special Instructions on Identification." Written on one page of the attachment is an arrow and the words "Requested Instruction on Eye-witness *Ident.*" The arrow appears to point to a sentence on that page which is set off by vertical marks and which reads: "If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty."

From this record we cannot determine whether the defendant was requesting only the one sentence instruction or the entire model special instruction, and we strongly disapprove this form of request for instructions under N.C.G.S. § 15A-1231(a).

We have examined the instructions given by the trial judge and find that his instruction on the issue of identification informed the jury that the burden of proving the identity of each defendant beyond a reasonable doubt was upon the State and that the jury "must be satisfied beyond a reasonable doubt that the defendant and each defendant was the perpetrator of each of the crimes charged before [they could] return a verdict of guilty as to that particular crime and that particular defendant." Furthermore, the instruction adequately explained the law.

This assignment of error is overruled.

D.

[22] The final exception to the instructions is that of defendant Paige regarding the jury's consideration of the evidence relating to his possession of the serpentine bracelet.

According to the evidence, a serpentine bracelet was taken from the victim in Mecklenburg County. Based on this fact, we have held in this opinion that judgment must be arrested in the common law robbery case. Therefore to the extent that the defendant's requested instruction related to application of the doctrine of recent possession as proof that the possessor stole the property possessed, the defendant's objection has been rendered moot.

However, evidence that the defendant possessed items taken from the victim in Mecklenburg County could have been considered relevant to the jury's finding that the defendant was one of the persons who committed the entire series of offenses, and therefore we will address the issue.

The defendant essentially requested a charge which would be appropriate in a civil case contesting ownership of personal property; i.e., that since the defendant had possession of the bracelet, it was presumed to be his, *Vinson v. Knight*, 137 N.C. 408, 49 S.E. 891 (1905). Such an instruction was not required in this case. The victim identified the bracelet which was introduced at trial as the bracelet which was taken from her by one of her abductors. She was questioned extensively on cross-examination by counsel for defendant Paige about the absence of identifying scratches or initials on the bracelet but steadfastly said that she had worn the bracelet for a long time and could identify it as her bracelet. The same bracelet was identified by Officer Garnes as the one taken from the defendant on the night of his arrest. Thus, the jury was presented with positive evidence that the bracelet which the defendant was wearing when he was arrested was the bracelet which had been taken from the victim. The trial judge did not instruct the jury regarding the doctrine of recent possession but rather instructed them that they had to find from the evidence and beyond a reasonable doubt that Paige "took and carried away a bracelet and ring from the person of [the victim] without her voluntary consent" by violence or putting her in fear, "the defendant Paige knowing that he was not entitled to take the bracelet and ring" before they could convict him of common law robbery. Because ownership of the bracelet was not the issue before the jury, we hold that the trial judge did not err in refusing to instruct the jury regarding the presumption of ownership arising from possession.

[23] Defendant Paige also assigns error to the following instruction:

Also, members of the jury, during the course of the trial some evidence [sic] introduced about a bracelet being found on the defendant Paige. I instructed you at that time and again at this time that you are not to consider that against the defendant Lowery.

Defendant Paige contends that the instruction was in effect a statement that the jury could consider the evidence regarding the bracelet against him and thus was a prejudicial comment on the evidence in violation of N.C.G.S. § 1-180. We note that N.C.G.S. § 1-180 was repealed effective 1 July 1978, but that the essence of the statute has been carried forward into N.C.G.S. §§ 15A-1222 and 1232.

The instruction followed an explanation to the jury that each case against each defendant was a separate case, requiring individual consideration. In that context, the trial judge's use of the word "against" was not an expression of opinion but a cautionary instruction that the jury should not consider that evidence in considering defendant Lowery's guilt or innocence. This is the type of post-conviction nit-picking that led this Court to adopt Appellate Rule 10(b)(2). The defendant failed to call the allegedly erroneous instruction to the attention of the trial judge at any time. The instruction clearly does not rise to the level of "plain error." *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

This assignment of error is overruled.

As to Defendant Paige:

Case No. 84CRS3129 (Stanly County 84CRS1699, first degree sexual offense) — Judgment arrested.

Case No. 84CRS3130 (Stanly County 84CRS1700, first degree rape) — Judgment arrested.

Case No. 84CRS3127 (Stanly County 84CRS1697, common law robbery) — Judgment arrested.

Case No. 84CRS3120 (Stanly County 84CRS990, second degree kidnapping) — No error.

Case No. 84CRS3121 (Stanly County 84CRS991, common law robbery) — No error.

As to Defendant Lowery:

Case No. 84CRS3126 (Stanly County 84CRS1696, first degree sexual offense) — Judgment arrested.

Case No. 84CRS3125 (Stanly County 84CRS1695, common law robbery) — Judgment arrested.

Case No. 84CRS3124 (Stanly County 84CRS994, second degree kidnapping)—No error.

Case No. 84CRS3123 (Stanly County 84CRS993, common law robbery)—No error.