STATE OF NORTH CAROLINA v. THANAWUTH I. NA AYUDKYA A/K/A TUIE

No. 894SC273

(Filed 19 December 1989)

**1. Conspiracy § 6 (NCI3d)— conspiracy to commit robbery— sufficiency of evidence**

   Evidence was sufficient to show that defendant knew in advance that a robbery was going to occur, that he participated with another in the robbery with each having preassigned roles and that he and the other person conspired to commit the robbery where the evidence tended to show that defendant had agreed with the third person at some earlier time to rob the victims; the victims testified that defendant was unusually nervous during the visit just prior to the robbery; defendant knew to go out to the car and retrieve duct tape to bind the victims after they had been detained; and when the robbery began, defendant was the first one to act, saying "Let's do it now" as he grabbed one victim.

**Am Jur 2d, Conspiracy §§ 10, 13-15, 40.**

**2. Criminal Law §§ 89.3, 89.9 (NCI3d)— witness's prior statement—admissibility for corroboration or impeachment**

   In a prosecution for robbery, the trial court did not err in allowing into evidence a witness's prior statement to "corroborate or impeach, whatever happens," where the prior statement corroborated the witness's direct testimony and tended to impeach his cross-examination testimony. N.C.G.S. § 8C-1, Rule 607.

**Am Jur 2d, Witnesses §§ 596, 629, 641, 645, 648.**

APPEAL by defendant from judgments entered 14 September 1988 by *Judge Henry L. Stevens, III,* in SAMPSON County Superior Court. Heard in the Court of Appeals 11 October 1989.

Defendant was indicted on two counts of robbery with a dangerous weapon (88CRS2398 & 3036), two counts of second degree kidnapping (88CRS3038 & 3040), conspiracy to commit robbery (88CRS3039), and felonious larceny and felony possession of stolen goods (88CRS3037).

The evidence for the State tended to show that on the evening of 18 April 1988 defendant and Ricky Powers went to the Lockamy home and gained entry by telling the Lockamys that defendant's car was overheating. Defendant was a friend of the Lockamys. Defendant and Mrs. Lockamy are both originally from Thailand and defendant previously had worked part time for Mrs. Lockamy in her restaurant. When defendant and Powers entered the house, Powers joined Mr. Lockamy in the living room and defendant asked to use the bathroom. Thereafter, defendant asked to have some water. The Lockamys testified that defendant was acting "very nervous" during the visit but Powers was very calm. After defendant and Powers had been in the home for some time, defendant grabbed Mrs. Lockamy and held a knife to her neck. Powers produced a gun and told Mr. and Mrs. Lockamy to get on the floor. Defendant then taped the Lockamys' hands behind their backs and placed tape over their mouths. Defendant and Powers then took jewelry and money from each of the Lockamys. Defendant took a handgun from their bedroom while Powers took the guns that were in a gun cabinet in the living room. The State's evidence also tended to show that defendant pawned several of the items taken from the Lockamy home and had others in his possession when he surrendered to law enforcement officers.

The State also presented evidence from George Malarchek that he, Powers and defendant had decided to rob Mrs. Lockamy because she carried large amounts of cash. Malarchek also testified of an aborted attempt to rob Mrs. Lockamy at her home. While being cross-examined in regard to defendant's involvement in the prior conversations Malarchek contradicted his prior testimony and stated that defendant had nothing to do with the prior attempt or the earlier discussions. Over defendant's objection, the State introduced a prior statement made by Malarchek to "corroborate — or impeach, whatever happens." The statement tended to corroborate Malarchek's direct testimony and impeach his cross-examination testimony regarding prior conversations with the defendant and Powers about robbing Mrs. Lockamy. Defendant's motion to dismiss the charges was denied.

Defendant testified that he was acting under duress exerted by Powers, that Powers had threatened his life and the life of his mother, and that he also feared for the Lockamys' safety if he tried to tell them of the planned robbery. Defendant also denied

any involvement in conversations with Powers and Malarchek about robbing Mrs. Lockamy.

The State called Powers as a witness on rebuttal. He testified that the robbery scheme was defendant's idea and that defendant wanted to kill the Lockamys but that he would not agree to the robbery if defendant intended to harm the Lockamys. Powers also testified that he and defendant had planned the robbery to look like Powers was in charge since defendant was the Lockamys' friend.

At the close of all of the evidence defendant's renewed motions to dismiss were denied. The jury convicted defendant of all charges.

The trial court arrested judgment on the felonious larceny and felony possession conviction but entered judgment on the remaining convictions. The trial court consolidated the two robbery convictions and sentenced defendant to the presumptive term of 14 years. The trial court then consolidated the two second degree kidnapping convictions and sentenced defendant to the presumptive term of 9 years. Finally, the trial court sentenced defendant to the presumptive prison term of 3 years for the conspiracy to commit robbery conviction. Defendant's sentences were to run consecutively. Defendant appeals.

*Attorney General Thornburg, by Associate Attorney General David N. Kirkman, for the State.*

*Philip E. Williams for defendant-appellant.*

EAGLES, Judge.

Defendant makes two arguments on appeal. First, defendant asserts that the trial court erred in denying his motion to dismiss the conspiracy charge. Second, defendant asserts that the trial court erred in allowing the admission of Malarchek's prior statement. After consideration of defendant's arguments and careful review of the record, we find no error.

[1] Defendant argues that the conspiracy charge should have been dismissed because there was no substantive evidence of his agreement to rob the Lockamys. Defendant asserts that Malarchek's testimony never showed an agreement was reached and Malarchek's prior statement was admitted for corroboration, not as substantive evidence. Therefore, defendant asserts there was no evidence of a conspiracy. We find no merit in defendant's argument.

"A criminal conspiracy is the unlawful concurrence of two or more persons in a wicked scheme—the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way or by unlawful means. . . . No overt act is necessary to complete the crime of conspiracy. 'As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed.'" A criminal conspiracy may be established by circumstantial evidence from which the conspiracy may be legitimately inferred.

*State v. Branch*, 288 N.C. 514, 535, 220 S.E.2d 495, 509-10 (1975) (citations omitted), *cert. denied*, 433 U.S. 907, 53 L.Ed. 2d 1091, 97 S.Ct. 2971 (1977), *rev'd on other grounds, State v. Adcock*, 310 N.C. 1, 310 S.E.2d 587 (1984). The existence of a conspiracy may be established by direct or circumstantial evidence. "Direct proof of [conspiracy] is not essential, for such is rarely obtainable. It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933). Upon a motion to dismiss in a criminal case, the court considers the evidence in the light most favorable to the State, resolves all contradictions and discrepancies in the State's favor and gives the State the benefit of every reasonable inference which can be drawn from the evidence. See *State v. Abernathy*, 295 N.C. 147, 165, 244 S.E.2d 373, 384-85 (1978).

Here there was circumstantial evidence that tended to show that defendant had agreed with Powers at some earlier time to rob the Lockamys. The Lockamys testified that defendant was unusually nervous during the visit just prior to the robbery. Additionally, the victims' testimony reveals circumstances that show a prior agreement regarding the robbery: Powers asked about Mr. Lockamy's elderly aunt although only defendant had known she lived in the Lockamys' house; defendant knew to go out to the car and retrieve duct tape to bind the victims after they had been detained; and, when the robbery began, defendant was the first one to act and he said "let's do it now" as he grabbed Mrs. Lockamy. Taken together, this evidence is sufficient to show that defendant knew in advance that a robbery was going to occur, that he participated with Powers in the robbery with each having preassigned roles and that defendant and Powers conspired to commit the robbery.

[2] Defendant's second argument is that the trial court erred in allowing the admission of Malarchek's prior statement. Defendant argues that the State used Rule 607 of the North Carolina Rules of Evidence as a subterfuge for the admission of otherwise impermissible hearsay. Rule 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." G.S. 8C-1, Rule 607. Defendant asserts that *State v. Burton*, 322 N.C. 447, 368 S.E.2d 630 (1988) is dispositive of this issue. In *Burton*, our Supreme Court stated that where a witness's prior statement contradicted his sworn testimony, the prior statement "was not admissible under the guise of corroborative evidence." 322 N.C. at 451, 368 S.E.2d at 633. The prior statement made by Malarchek was introduced to "corroborate or impeach, whatever happens." The State argues that the admission of the prior statement for purposes other than substantive was an attempt to rehabilitate the witness. The prior statement corroborated Malarchek's direct testimony although it tended to impeach his cross-examination testimony. Therefore, the State argues the statement was properly introduced. We agree.

As this court has stated previously, there is a danger that Rule 607, if not applied cautiously, would make "fair game" almost any out-of-court statement made by a witness. *State v. Bell*, 87 N.C. App. 626, 633, 362 S.E.2d 288, 292 (1987). This is especially true when Rule 607 is combined with our rule allowing use of prior consistent statements for corroboration. See, e.g., *State v. Ramey*, 318 N.C. 457, 468-69, 349 S.E.2d 566, 573-74 (1986). In the instant case Malarchek testified on direct examination that he, defendant and Powers had discussed robbing Mrs. Lockamy and that they attempted to rob her in the afternoon of the 18th of April. On cross-examination, however, Malarchek testified that defendant was not with Powers and him when they went to the Lockamys' house in the afternoon. Malarchek's prior statement was that the three men had made plans to rob Mrs. Lockamy at her restaurant and, after that plan fell through, at her home. There was also testimony that Malarchek had changed his story "eleven or so times" prior to giving the officer a statement. Though not offered as substantive evidence, the prior statement was admitted for a limited purpose, impeachment or corroboration, whichever the jury found. We find no merit in defendant's argument that the statement was erroneously admitted.

In the trial, we find no error.

Judges PARKER and GREENE concur.