STATE OF NORTH CAROLINA v. JOHNNY WAYNE WILSON, DEFENDANT-APPELLANT

STATE OF NORTH CAROLINA v. RICHARD LEE CLARK, DEFENDANT-APPELLANT

No. 9114SC960

(Filed 8 January 1993)

1. **Criminal Law § 313 (NCI4th)— breaking or entering and robbery—one defendant, multiple offenses—consolidation of indictments for trial—no error**

    The trial court did not err by permitting consolidation for trial of indictments against defendant Wilson arising from a series of break-ins and robberies where the evidence permitted the trial court to find a transactional connection between the three incidents, the trial court's instructions to the jury clearly separate the charges, and the offenses were not so separate in time and circumstance that consolidation was prejudicial to defendant.

    **Am Jur 2d, Actions § 159.5; Criminal Law § 20.**

    **Consolidated trial upon several indictments or informations against same accused, over his objection. 59 ALR2d 841.**

2. **Criminal Law § 324 (NCI4th)— two defendants—trials joined—no error**

    The trial court did not abuse its discretion by joining defendant Wilson's trial for a series of break-ins and robberies with that of defendant Clark. The trial court properly instructed the jury that they could consider certain testimony only as to defendant Clark and not as to defendant Wilson, a remark by defendant Clark which was recounted by a witness was not in the nature of a confession, so that *Bruton v. United States*, 391 U.S. 123, did not apply, and, since a proper limiting instruction was given, defendant Wilson made no showing that he was prejudiced by this testimony.

    **Am Jur 2d, Trial §§ 157, 158.**

    **Supreme Court's application of rule of Bruton v. United States (1968), holding that accused's rights under confrontation clause of Federal Constitution's sixth amendment are violated**

where the codefendant's statement inculpating accused is admitted at joint trial. 95 L. Ed. 2d 892.

3. **Indictment, Information, and Criminal Proceedings § 4 (NCI4th) — superseding indictment — not served until day of trial — counsel not served until day of trial — no error**

There was no error in a prosecution for a series of break-ins and robberies where counsel was not afforded a copy of a superseding indictment until the day of trial where the only difference between the two indictments is that the superseding indictment corrects the date of the alleged offense from 10 December 1989 to 10 December 1988, defendant Wilson was served with a copy of the indictment in open court more than eight months before trial, defense counsel was appointed on the same day for the remaining charges, and defendant was served with an indictment for conspiracy to commit the breaking and entering which referred to 10 December 1988.

**Am Jur 2d, Indictments and Informations § 22.**

4. **Evidence and Witnesses § 3208 (NCI4th) — breaking and entering and robbery — cross-examination of State's witness — prior alcoholic rehabilitation**

The trial court did not err in a prosecution for a series of break-ins and robberies by disallowing additional cross-examination regarding treatment received by a State's witness at the Alcoholic Rehabilitation Center. Defendant's counsel was allowed to cross-examine the witness concerning his substance abuse, two hospitalizations at ARC in 1984, treatment in a VA hospital in February 1989 for alcohol rehabilitation purposes, an arrest for drunk driving around the time he started "hanging around" defendant Wilson, use of other drugs, including marijuana, cocaine and LSD, when he was hanging around defendant Wilson, his hearing voices, his frequent blackout spells, and that during the time of the offenses he was drinking a case of beer, probably two liters of wine, and occasionally a pint or a fifth of liquor. Any further cross-examination would have been cumulative.

**Am Jur 2d, Witnesses §§ 811, 812.**

**Impeachment of witness with respect to intoxication. 8 ALR3d 749.**

5. **Evidence and Witnesses § 761 (NCI4th)— recross-examination —witness's conversation with prosecutor or detective— admitted elsewhere**

There was no error in a prosecution arising from a series of break-ins and robberies where defendant Wilson contended that he was denied the opportunity to cross-examine a State's witness about overnight conversations between the witness and the prosecutor or the detective in the case, but any error was cured when defendant Wilson's counsel was later allowed to again question the witness about any overnight conversations with the prosecutor or detective.

**Am Jur 2d, Appeal and Error § 806.**

6. **Criminal Law § 632 (NCI4th)— breaking or entering, burglary and robbery—motion to dismiss—testimony of accomplice— evidence sufficient**

There was sufficient evidence to withstand defendant Wilson's motion to dismiss all charges arising from a series of break-ins and robberies where, according to defendant, the case turned upon the testimony of an accomplice, which was replete with inconsistencies and self-contradictions. As a general rule, the uncorroborated testimony of an accomplice is sufficient to establish substantial evidence of each essential element.

**Am Jur 2d, Evidence § 1151.**

7. **Criminal Law § 394 (NCI4th)— closing arguments—no expression of opinion by judge**

The trial court did not express its opinion to the jury on the question of defendant's guilt during closing arguments in a prosecution arising from a series of break-ins and robberies.

**Am Jur 2d, Judges §§ 166-170; Trial §§ 294, 312, 625.**

8. **Conspiracy § 43 (NCI4th)— instructions—use of and/or—no error**

There was no error in a prosecution for conspiracy to commit armed robbery where the judge used "and/or" in instructing the jury and in submitting verdict sheets. Although defendant Wilson contended that the "and/or" phrase confused the jury and led the jury to believe that defendant Wilson could be convicted of conspiring with himself, the instruction required the jury to find that Wilson conspired with at least

STATE v. WILSON

[108 N.C. App. 575 (1993)]

one of the other named persons and there was no showing that the jury could have been confused by these instructions or jury sheets.

**Am Jur 2d, Trial §§ 1131, 1151.**

9. **Criminal Law § 497 (NCI4th)— jury—request to review written statements in jury room—denied—no error**

The trial court did not err in a prosecution arising from a series of robberies, burglaries, and larcenies by refusing to allow the jury to examine the written statements of a State's witness in the jury room. The consent of both parties is required by N.C.G.S. § 15A-1233(b), and the record reveals that the State did not give its consent.

**Am Jur 2d, Trial § 1671.**

10. **Criminal Law § 324 (NCI4th)— joinder of defendants—larcenies and robberies—error**

The trial court erred in a prosecution for several break-ins and robberies by joining the trial of defendant Clark with defendant Wilson where defendant Clark was prejudiced in that the jury first heard evidence as to charges from two separate incidents with which defendant Clark was not charged. Limiting instructions given by the trial court did not operate to dispel the resulting prejudice.

**Am Jur 2d, Trial §§ 157, 158.**

Appeal by defendants from judgments entered 25 March 1991 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 10 November 1992.

Defendant Johnny Wayne Wilson was indicted for the following: two counts of robbery with a dangerous weapon; two counts of felonious larceny; two counts of felonious possession of stolen goods; two counts of conspiracy to commit robbery with a dangerous weapon; one count of first degree burglary; one count of felonious breaking or entering; and one count of conspiracy to commit felonious breaking and entering. Defendant Richard Lee Clark was indicted for one count of robbery with a dangerous weapon and one count of conspiracy to commit robbery with a dangerous weapon.

STATE v. WILSON

[108 N.C. App. 575 (1993)]

The State's evidence showed that on 10 December 1988, a residence at 613 Pleasant Drive in Durham was broken into and a rifle, a pillow case and one set of silver flatware were taken.

Both Samuel Lynn and Barbara Lynn testified that on 17 December 1988, two men wearing ski masks and gloves broke into their house and robbed them at gunpoint. The taller robber held a rifle on Mr. Lynn while the shorter robber, who was carrying a pistol, rummaged through the house. At some point, the shorter robber fired a pistol shot into the wall above Mrs. Lynn's head and also fired a shot through Mr. Lynn's hair into the back of his reclining chair. Two used cartridge casings were later recovered. While holding the Lynns at gunpoint, the robbers took their wristwatches and rings. In addition, approximately $550 was missing from Mr. Lynn's wallet which was located in the pocket of his pants hanging in another room. Two officers of the Sheriff's Department who investigated this robbery also testified.

Durham Police Officer Kenneth Hall testified that on 21 December 1988, he and his partner were involved in a car chase with two white males in a green 1970's model car. Although the occupants of the car were not apprehended, a .25 calibre pistol was recovered from just outside the passenger door of this car. In January 1989, Officer Hall, after examining some photographs, believed that Vernon Wilson and Defendant Johnny Wilson were the occupants of the car. Eugene Bishop of the S.B.I. further testified that in his opinion the .25 calibre pistol found beside the car after the chase fired the two cartridge casings found at the Lynn residence.

Ezra Rigsbee testified that he is the owner of Rigsbee's Lounge, and that on the evening of 22 December 1988, three armed white men wearing ski masks and camouflage pants entered and robbed the lounge. About three shots were fired by these men and one of the robbers pointed a .22 calibre rifle at Rigsbee.

Patricia Ann Parks testified that in December 1988, she lived with her younger son and her daughter was married to Defendant Richard Lee Clark. Sometime in late December of 1988, Defendant Clark went up into the attic and returned with some ski masks and a camouflage suit. Two of the masks were dark in color and the third was red with blue around it. The next day, Ms. Parks heard Defendant Clark remark to her son "did he hear about Rigsbee getting knocked off." The following day, Defendant Clark returned and gave Ms. Parks either $94 or $96. In response to Ms. Parks'

question as to how this money was obtained, Defendant Clark stated that although he was unemployed, he had been paid for chopping down a tree.

As the result of a plea arrangement, Andrew Hyde agreed to testify against both defendants. Hyde testified that he has known Defendant Wilson for about 20 years and that in mid-December 1988, he and Defendant Wilson broke into a house located at 613 Pleasant Drive. Among the items taken was a .22 calibre rifle.

Hyde further testified that on 17 December 1988, he, Vernon Wilson and Defendant Wilson took part in the robbery of the Lynn residence. Only Defendant Wilson and Hyde entered the house; Vernon Wilson stayed outside in the car. Upon entering the house, Defendant Wilson was armed with a .25 calibre pistol while Hyde was armed with the .22 calibre rifle taken earlier from the house on Pleasant Drive. According to Hyde, he fired a shot into the wall above Mrs. Lynn's head and took Mr. Lynn's wallet with the money from pants located in the bedroom. Hyde then placed the rifle up to Mr. Lynn's head and at some point, another shot was fired. Hyde testified that Defendant Wilson threatened to cut off Mr. Lynn's fingers if he could not get his rings off.

Hyde further testified that following the Lynn robbery, he and Vernon Wilson were involved in a police chase. After they had gotten far enough in front of the police, Hyde threw the .22 rifle, the .25 calibre pistol and the ski masks out the window. According to Hyde, the .22 calibre rifle was the one taken from the house on Pleasant Drive, while the .25 calibre pistol was one of the weapons used in the Lynn robbery. Hyde returned later and retrieved the rifle.

One day, while Hyde was drinking, he heard Vernon Wilson and the two defendants discussing the possibility of robbing Rigsbee's Lounge. The three men decided to rob the lounge, but Hyde refused to enter the lounge since he had been a patron there on several occasions. Before undertaking the Rigsbee robbery, Hyde and Clark visited the house where Defendant Clark was staying and obtained some ski masks. On the day of the robbery, Hyde went into Rigsbee's Lounge to "scope it out" and then acted as the get-away driver. According to Hyde the Rigsbee robbery was committed by both defendants and Vernon Wilson and all three wore ski masks and gloves. During the robbery, Defendant Wilson was armed with the .22 calibre rifle stolen from the house on Pleasant Drive. Hyde

STATE v. WILSON

[108 N.C. App. 575 (1993)]

further testified that at some point after the Rigsbee robbery he threw the .22 calibre rifle and a ski mask over a bridge at Atlantic Beach.

On cross-examination, Hyde was questioned concerning his drinking habits at the time the robberies were committed. He testified that he would drink daily "a case of beer, probably two liters of wine" and occasionally a pint or a fifth of liquor. Hyde also acknowledged that he experienced "black-out spells."

After hearing the evidence presented, the jury found Defendant Wilson guilty of (1) two counts of robbery with a dangerous weapon, (2) two counts of conspiracy to commit robbery with a dangerous weapon, (3) one count of first degree burglary, (4) one count of felonious breaking and entering, (5) one count of felonious larceny, and (6) one count of conspiracy to commit felonious breaking and entering. Defendant Clark was found guilty of (1) one count of robbery with a dangerous weapon and (2) one count of conspiracy to commit robbery with a dangerous weapon.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Jacob L. Safron, for the State.*

*Loflin & Loflin, by Thomas F. Loflin III, for Defendant Appellant Wilson.*

*Spears, Barnes, Baker, Wainio, Brown & Whaley, by Craig B. Brown, for Defendant Appellant Clark.*

WALKER, Judge.

Since this case involves two different defendants, and each has submitted a brief to this Court, we will examine each defendant's arguments separately.

## I. Defendant Wilson.

[1] In his first assignment of error, Defendant Wilson argues the trial court erred in permitting consolidation of all the indictments for trial. According to defendant these indictments and the State's proof, indicate three separate and distinct criminal transactions, these being the breaking and entering of the house on Pleasant Drive and the two robberies involving the Lynn residence and Rigsbee's Lounge.

Joinder of offenses is governed by G.S. 15A-926(a) which provides:

> Two or more offenses may be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan.

Under this statute, joinder is permissible if there is a "transactional connection" between the various criminal acts giving rise to the charges. *State v. Futz*, 92 N.C.App. 80, 373 S.E.2d 445 (1988). A transactional connection exists where the crimes are part of a single conspiracy or "because similarities of the crime constitute a fingerprint of the perpetrator." *State v. Church*, 99 N.C.App. 647, 652, 394 S.E.2d 468, 471 (1990). Whether joinder of offenses is permissible under this statute is a question addressed to the discretion of the trial court which will only be disturbed if the defendant demonstrates that joinder deprived him of a fair trial. *See State v. Bracey*, 303 N.C. 112, 277 S.E.2d 390 (1981).

Here, the evidence permitted the trial court to find a transactional connection between the three incidents. All these offenses took place within a two week period in December of 1988. Two of the incidents were armed robberies where the perpetrators wore both ski masks and gloves and one perpetrator was armed with a rifle stolen from the house on Pleasant Drive. Furthermore, Hyde testified that both he and Defendant Wilson were involved in each incident.

Defendant Wilson has not shown that joinder deprived him of a fair trial. The trial court's instructions to the jury clearly separate the charges arising from each of the three incidents. Furthermore, we find that the offenses were not so separate in time and circumstance that consolidation was prejudicial to defendant. Accordingly, we hold that the trial court did not abuse its discretion in joining these offenses for trial.

[2] In his next assignment of error, Defendant Wilson argues the trial court erred in joining his trial with that of Co-defendant Clark. We first note that public policy compels consolidation as the rule rather than as the exception where each defendant is sought to be held accountable for the same crime or crimes. *State v. Paige*, 316 N.C. 630, 643, 343 S.E.2d 848, 857 (1986). A trial court's decision on the question of joinder of two defendants is a discretionary ruling. *State v. Paige* at 641, 343 S.E.2d at 855. Absent a showing that a defendant has been deprived of a fair trial by joinder, the trial court's decision on that matter will not be disturbed. *Id.*

According to Defendant Wilson, he was prejudiced by joinder of the two trials since certain testimony adduced was admissible only against his co-defendant. Patricia Ann Parks testified that sometime in late December of 1988, Defendant Clark entered her attic and returned with some ski masks. She also testified that Defendant Clark made the statement to her son, "did he hear about you know Rigsbee getting knocked off." The trial court instructed the jury that Ms. Parks' testimony was not admissible as against Defendant Wilson.

It is not uncommon where two defendants are joined for trial that some evidence will be admitted which is not admissible as against both defendants. Our Courts have recognized that "limiting instructions ordinarily eliminate any risk that the jury might have considered evidence competent against one defendant as evidence against the other." *State v. Paige,* 316 N.C. at 643, 343 S.E.2d at 857. Here, the trial court properly instructed the jury that they could consider Ms. Parks' testimony only as to Defendant Clark and not as to Defendant Wilson.

Despite the fact that the trial court gave a proper limiting instruction, Defendant Wilson contends that under *Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476 (1968), this instruction did not alleviate any prejudice. In *Bruton,* there was a joint trial and the trial court admitted a co-defendant's confession which implicated the defendant. The trial court instructed the jury that this confession could not be used as evidence in determining the defendant's guilt or innocence. The Supreme Court held that despite the curative instruction given, allowing the co-defendant's confession violated Defendant Bruton's Sixth Amendment right of cross-examination. In the present case, unlike *Bruton,* Defendant Clark's remark to Ms. Park's son is in the nature of a question asking whether Ms. Park's son had heard that a crime had been committed; this remark is not in the nature of a confession. Therefore, since there was no "confession" implicating Defendant Wilson, *Bruton* is inapplicable. *See Richardson v. Marsh,* 481 U.S. 200, 95 L.Ed.2d 176 (1987). Further, since a proper limiting instruction was given, Defendant Wilson has made no showing that he was prejudiced by this testimony. Accordingly, as to Defendant Wilson, the trial court did not abuse its discretion in joining the two defendants for trial.

[3] In his next assignment of error, Defendant Wilson argues the trial court erred in proceeding to trial when his counsel was not

afforded a copy of a superseding indictment until the day of trial in violation of G.S. 15A-943(b). The original indictment (90CRS2183) charged Defendant Wilson with (1) felonious breaking and entering, (2) felonious larceny, and (3) felonious possession of stolen goods. These charges relate to the break-in of the house located on Pleasant Drive. The only difference between the two indictments is that the superseding indictment, returned by the Grand Jury on 11 June 1990, corrects the date of the alleged offense from 10 December 1989 to 10 December 1988.

In *State v. Carson*, 320 N.C. 328, 357 S.E.2d 662 (1987) two defendants were tried and convicted upon superseding indictments. Similar to the present case, defendants there argued that they were improperly indicted and tried since the superseding indictments were not served on the defendants prior to trial. The trial court held that there was no error stating "[t]here was no requirement that these defendants be served with copies of the superseding indictments, however, since it is clear from the record before us that the defendants were represented by counsel at the time those indictments were returned by the grand jury." *State v. Carson*, 320 N.C. at 334, 357 S.E.2d at 666.

In the present case, Mr. Loflin had been appointed on 23 February 1990 to represent Defendant Wilson in the Lynn residence armed robbery case. The docket sheet in 90CRS17192 (relating to the robbery of the Lynn residence) reveals that Defendant Wilson was formally arraigned on 25 June 1990 and bond was set in the same amount as in case 90CRS2183 (the superseding indictment). This docket sheet further shows that on this same day, indictments were served on defendant in open court and Mr. Loflin was appointed in the remaining cases. In the pretrial motions conference, after examining this docket sheet, counsel for Defendant Wilson acknowledged:

> [A]pparently what happened [on 25 June 1990] is they brought him down to the [sic] arraign him on the superseding indictment and they appointed me at the same time that they arraigned him and he pled not guilty.

The purpose of an indictment is: (1) to give defendant notice of the charges against him so that he may prepare his defense; and (2) to enable the court to know what judgment to pronounce in case of conviction. *State v. Russell*, 282 N.C. 240, 192 S.E.2d 294 (1972). Since the record reveals Defendant Wilson was served a

copy of the superseding indictment in open court more than eight months before trial, defendant had adequate notice of the charges against him and the trial court did not err in proceeding to trial on the superseding indictment.

We further note that Defendant Wilson was served with an indictment in 90CRS17193 charging a conspiracy to commit the breaking and entering of the house on Pleasant Drive on 10 December 1988. This further supports the fact that Defendant Wilson had notice of the charges against him and that the superseding indictment only corrected the year of the offense.

[4] In his next assignment of error, Defendant Wilson contends the trial court erred in refusing to allow cross-examination of State's witness Andrew Hyde concerning (1) Hyde's prior treatment at the Alcoholic Rehabilitation Center (ARC) and (2) alleged conversations with the prosecution.

Regarding Hyde's treatment at ARC, Defendant Wilson contends it was error for the trial court to "totally deny Wilson the right and opportunity to cross-examine Hyde with respect to prior treatment he had received at the . . . [ARC]." While we agree with defendant that this information impacted directly upon Hyde's credibility, we find the trial court did not err by disallowing additional cross-examination regarding the treatment he received in 1984 at the ARC. Defendant's counsel was allowed to cross-examine Hyde concerning his substance abuse, two hospitalizations at ARC in 1984, treatment in a VA Hospital in February 1989 for alcohol rehabilitation purposes, his arrest for drunk driving around the time he started "hanging around" Defendant Wilson, his use of other drugs, including marijuana, cocaine and LSD, when he was "hanging around" Defendant Wilson, his hearing "voices," his frequent "blackout spells," and that during the time of the offenses charged, he was drinking "a case of beer, probably two liters of wine" and occasionally a pint or a fifth of liquor. Considering the information elicited by Defendant Wilson, any further cross-examination as to Hyde's treatment at ARC was merely cumulative. "[I]t is the duty of the trial judge to control the examination and cross-examination of witnesses." *State v. Greene*, 285 N.C. 482, 489, 206 S.E.2d 229, 234 (1974).

[5] We also find no merit in Defendant Wilson's contention that he was denied the opportunity to cross-examine Hyde concerning any overnight conversations between Hyde and the prosecutor or

the detective in the case. This question by Defendant Wilson's counsel came on recross-examination. On cross-examination, latitude is allowed in showing the bias, hostility, corruption, interest or misconduct of the State's witness. *State v. Roberson*, 215 N.C. 784, 786, 3 S.E.2d 277, 279 (1939). "Cross-examination would be of little value if a witness could not be freely interrogated as to his . . . conduct as connected with the parties or the cause of action." *Id.* at 786-787, 3 S.E.2d at 279. We note that later in the trial Defendant Wilson's counsel was allowed to again question Hyde concerning whether he engaged in any overnight conversations with the prosecutor or the detective. Any previous error on the part of the trial court was thus cured.

[6] In his next assignment of error, Defendant Wilson argues that the trial court erred in failing to grant his motion to dismiss all charges. This raises the question of sufficiency of the evidence to go to the jury. According to defendant, his motion should have been granted since the entire case turned upon the testimony of his accomplice, Andrew Hyde, and Hyde's testimony was replete with inconsistencies and self-contradictions.

When a defendant moves for dismissal, the trial court must determine whether there is substantial evidence of each essential element of the offenses charged. *State v. Vause*, 328 N.C. 231, 400 S.E.2d 57 (1991). In ruling upon a motion to dismiss, the trial court must consider the evidence presented in the light most favorable to the State, drawing every reasonable inference therefrom. *Id.* As a general rule, the uncorroborated testimony of an accomplice is sufficient to establish substantial evidence of each essential element. *See State v. Horton*, 275 N.C. 651, 170 S.E.2d 466 (1969), *cert. denied*, 398 U.S. 959, 26 L.Ed.2d 545 (1970). Here, there was sufficient evidence to withstand Defendant Wilson's motion to dismiss the charges.

[7] In his next assignment of error, Defendant Wilson contends the trial court impermissibly expressed its opinion to the jury on the question of defendant's guilt. Defendant Wilson points to certain instances during closing arguments in which the trial court allegedly expressed its opinion. Wide latitude is allowed to counsel in closing arguments and G.S. 15A-1222 prohibits a trial judge from expressing any opinion in any way in the presence of the jury. We have carefully examined each of Defendant Wilson's contentions and they are without merit.

STATE v. WILSON

[108 N.C. App. 575 (1993)]

[8] Next Defendant Wilson contends the trial court erred in using the phrase "and/or" in instructing the jury and in submitting verdict sheets on the two counts of conspiracy to commit armed robbery. According to Defendant Wilson, use of the phrase "and/or" confused the jury and erroneously led the jury to believe Defendant Wilson could be convicted of "conspiring" with himself. As to the charge of conspiracy to commit armed robbery of the Lynn residence, the trial court instructed:

> I further charge that if you find from the evidence beyond a reasonable doubt that on or about the 17th day of December, 1988, the defendant, Johnny Wayne Wilson, agreed with Vernon Forest Wilson and/or Lawrence Andrew Hyde and/or others to commit armed robbery against Samuel Lynn and Barbara Lynn and Chris Lynn and that the defendant, Johnny Wayne Wilson, and/or Vernon Forest Wilson, and/or Lawrence Andrew Hyde intended at the time that the agreement was made that it would be carried out, it would be your duty to return a verdict of guilty as charged.

The verdict sheets and instructions as to the conspiracy to commit armed robbery of Rigsbee's Lounge also used the phrase "and/or".

Before a defendant can be found guilty of criminal conspiracy, the State must prove and the jury must find that there was an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way. *State v. Ayudkya*, 96 N.C.App. 606, 386 S.E.2d 604 (1989). Here, in relevant part, the jury was also instructed:

> Both of the defendants are charged with the crime of conspiracy. A conspiracy is a combination or agreement of *two or more persons* to join together to attempt to accomplish some unlawful purpose. It is a kind of partnership in criminal purposes in which each member becomes the agent of every other member. The gist or essence of the offense is a combination or *mutual agreement by two or more persons* to disobey or to disregard the law.
>
> . . . .
>
> What the evidence in the case must show beyond a reasonable doubt is first that the defendant *and at least one other person* entered into an agreement; second, that the agreement was to commit the alleged offenses; and third, the State must prove

that each defendant and at least one other person intended that the agreement be carried out at the time that it was made.

(emphasis added). These instructions required the jury to find that Defendant Wilson conspired with at least one of the other named persons. There is no showing that the jury could have been confused by these instructions or verdict sheets.

[9]  In his final assignment or error, Defendant Wilson contends that the trial court erred by refusing to allow the jury to examine the State's evidence in the confines of the jury room after the jury so requested. The evidence in question is the written statements of State's witness Lawrence Andrew Hyde.

As to this question, G.S. 15A-1233(b) provides in pertinent part:

Upon request by the jury *and with consent of all parties*, the trial judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence.

(emphasis added).

In the present case, the record reveals that the State did not give its consent for the jury to examine the evidence in the confines of the jury room. Accordingly, the trial court correctly denied the jury's request.

We have reviewed Defendant Wilson's remaining assignments of error and find them to be without merit.

## II. Defendant Clark.

[10]  In his first assignment of error, Defendant Clark contends the trial court erred in joining his offenses with those of Co-defendant Wilson. Joinder of defendants is governed by G.S. 15A-926(b)(2) which provides:

Upon written motion of the prosecutor, charges against two or more defendants may be joined for trial:

a. When each of the defendants is charged with accountability for each offense; or

b. When, even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

STATE v. WILSON

[108 N.C. App. 575 (1993)]

1. Were part of a common scheme or plan; or

2. Were part of the same act or transaction; or

3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

As stated previously, a trial court's decision on the question of joinder of two defendants is a discretionary ruling and will only be disturbed if defendant demonstrates that joinder deprived him of a fair trial. *State v. Bracey*, 303 N.C. 112, 277 S.E.2d 390 (1981). A defendant may be deprived of a fair trial where evidence harmful to the defendant is admitted which would not have been admitted in a severed trial. *See State v. Lowery*, 318 N.C. 54, 61, 347 S.E.2d 729, 735 (1986).

Here, after reviewing the evidence, we find that joinder of the charges for trial with Defendant Wilson deprived Defendant Clark of a fair trial. By reason of the joinder, the jury first heard evidence as to charges from two separate incidents for which Defendant Clark was not charged. These offenses were the break-in of the house on Pleasant Drive and the armed robbery of the Lynn residence. No evidence adduced at trial connected Defendant Clark to these two incidents. By allowing the jury to consider evidence of these charges, Defendant Clark was prejudiced and deprived of a fair trial.

We further note that the limiting instructions given by the trial court did not operate to dispel the resulting prejudice. While the trial court did instruct the jury that evidence relating to the break-in of the house on Pleasant Drive and relating to the robbery of the Lynn residence was not admissible against Defendant Clark, he was, nevertheless, forced to sit through the testimony of eleven witnesses and two and one-half days of trial before any evidence was received as against him. Based upon these facts, we cannot say the limiting instructions guaranteed defendant a fair trial.

We decline to examine Defendant Clark's remaining assignments of error since they have been either addressed in that portion of this opinion dealing with Defendant Wilson or they may not arise again upon retrial.

In the trial below we find

No error as to Defendant Wilson.

Reversed and remanded for a new trial as to Defendant Clark.

Judges GREENE and WYNN concur.