An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-716

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

v.                                        Hoke County
                                          No. 10 CRS 052200
TINA MAHONEY


Appeal by defendant from judgment entered 8 February 2013 by Judge Richard T. Brown in Hoke County Superior Court. Heard in the Court of Appeals 20 November 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Thomas H. Moore, for the State.*
>
> *Unti & Lumsden LLP, by Sharon L. Smith, for defendant.*


HUNTER, JR., Robert N., Judge.


Tina Mahoney ("Defendant") appeals the 8 February 2013 judgment following a jury trial convicting her of conspiracy to traffick in a controlled substance. Defendant argues that she did not receive a fair trial because her case was joined with a co-defendant for trial. We disagree and find no error.

**I.   Facts & Procedural Background**

On 28 February 2011, Defendant was indicted for conspiracy to traffick in a controlled substance. Defendant's mother and alleged co-conspirator, Flora Catherine Strickland, was indicted that same day for trafficking in a controlled substance by transport and by possession. On 4 June 2012, upon the State's motion, the trial court ordered that Defendant's trial be joined with that of Strickland. The trial was held at the 4 February 2013 session of Hoke County Superior Court, with the Honorable Richard T. Brown presiding. The State's evidence at trial tended to show the following.

Lola McEachern, an alleged co-conspirator with Defendant and Strickland, was a witness for the State. On 18 August 2010, Defendant called McEachern and told her that a package would be delivered the next day to 1307 Clan Campbell Avenue in Raeford, a house owned by McEachern. McEachern was not living in the house at the time, but she was going to be at the house to give furniture to Strickland. Defendant first told McEachern the package contained books. When McEachern questioned her honesty, Defendant admitted that the package contained marijuana. Defendant agreed to give McEachern marijuana and cash in exchange for McEachern picking up the package.

The next day, 19 August 2010, McEachern picked up Strickland and drove to a gas station, where they met Defendant. Defendant paid for $10 worth of gas for McEachern's car. McEachern and Strickland then drove to 1307 Clan Campbell Avenue.

During the day, Strickland was in contact by phone with Defendant and Carlos Mahoney, Defendant's husband. Strickland used McEachern's Assurance phone, which had Defendant's number stored in it. Defendant told Strickland that if a little brown van delivered the package, leave it on the porch, get in the car and leave the house. However, in a separate conversation, Carlos Mahoney told Strickland to pick up the package regardless of the circumstances.

The trial court informed the jury just before testimony regarding the phone conversations that for any conversation between Strickland and someone other than Defendant, the testimony could only be considered against Strickland, not Defendant. This meant that Strickland's conversations with Carlos Mahoney were only admitted against Strickland and were not admitted against Defendant. The jury was asked to raise their hands if they understood the instruction, and they did so.

The morning of 19 August 2010, Detective Kurt Stein of the Fayetteville Police Department was checking parcels at UPS as part of a routine check for narcotics being shipped into the city. He noticed a package he thought was suspicious based on its appearance and odor. It was addressed to Vincent Lim at 1307 Clan Campbell Avenue. In a lineup of packages, Detective Stein's K-9 alerted to the package addressed to Mr. Lim. A records check by the Hoke County Sheriff's Office showed that the name Vincent Lim had no relationship to 1307 Clan Campbell Avenue. After obtaining a search warrant, officers opened the box and found marijuana.

That afternoon, Sergeant Greg Johnson of the Fayetteville Police Department posed as a UPS delivery person, taking the package to 1307 Clan Campbell Avenue. Sergeant Johnson knocked on the door and, after there was no response, left the package on the front porch.

McEachern testified that she opened the door, pulled the package inside, put it in a closet, and went out to her car with Strickland. McEachern and Strickland drove around the neighborhood looking for anything out of the ordinary, such as law enforcement. Defendant had told them to do this. When they came back to the house, McEachern took a plastic storage tote

from her car, emptied it, and they both went into the house. McEachern then put the marijuana in the tote, took it back outside, and put it in her car. McEachern and Strickland then drove away again.

Carlos Mahoney called Strickland and said there was a tracking device in the package, so McEachern pulled the car over to get rid of the package. Detective Don Bell of the Fayetteville Police Department was following McEachern and Strickland when he found their car stopped on the side of the road. McEachern and Strickland were going to dispose of the package in the woods, but instead brought the package back to officers, where they were thereafter arrested.

While in jail, McEachern called Defendant, who assured her that she was trying to get McEachern out, but that McEachern's family was not helping out. Strickland was in another jail cell and yelled to McEachern that they were going to get her out of jail. Strickland was released from jail before McEachern. While still in jail, McEachern received a letter which appeared to be signed by Strickland's youngest daughter. McEachern, however, believed that Strickland herself wrote the letter. The letter expressed that someone was working to get McEachern out of custody, stating that "she is trying hard to get you out. . .

. She's waiting for some money to get here. . . . She wants you out just as bad as you want to get out.   Nobody wants to help you."   The letter went on to reference a phone call, saying, "She is mad that you hung up on her on the phone . . . . We know that you are upset, but don't take it out on one person that is trying to help you."   The letter did not identify who "she" referred to.

The trial court instructed the jury at the time the letter was introduced that it only related to Strickland and could not be considered against Defendant.   When the exhibit was received into evidence, the jury was again reminded that it was to be considered only against Strickland and not against Defendant.

On 8 February 2013, the jury found Defendant guilty of conspiracy to traffick marijuana.   Defendant was sentenced to 25-30 months imprisonment.   Defendant gave oral notice of appeal before Judge Brown.

## II.   Jurisdiction & Standard of Review

As Defendant appeals from the final judgment of a superior court, an appeal of right lies with this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2013).

We review the trial court's decision to join defendants for trial for abuse of discretion.   *State v. Rasor*, 319 N.C. 577,

581, 356 S.E.2d 328, 331 (1987) ("Whether defendants should be tried jointly or separately pursuant to these provisions is a matter addressed to the sound discretion of the trial judge.").

### III. Analysis

Defendant argues that she was deprived of a fair trial because she was joined with Strickland for trial. We disagree.

N.C. Gen. Stat. § 15A-926 (2013) allows defendants to be joined for trial when the offenses charged "[w]ere part of a common scheme or plan;" or "[w]ere part of the same act or transaction;" or "[w]ere so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." N.C. Gen Stat. § 15A-926(b)(2)b.. The trial court in the present case found that the offenses charged against Strickland and Defendant met all three criteria in the statute and thus ordered the offenses to be joined for trial.

"[A] trial court's decision on the question of joinder of two defendants is a discretionary ruling and will only be disturbed if defendant demonstrates that joinder deprived him of a fair trial." *State v. Wilson*, 108 N.C. App. 575, 589, 424 S.E.2d 454, 462 (1993). "A defendant may be deprived of a fair

trial where evidence harmful to the defendant is admitted which would not have been admitted in a severed trial." *Id.*

Defendant argues she did not receive a fair trial because there were three things harmful to her that should have been admissible against Strickland only: (1) evidence of Carlos Mahoney's telephone conversations with Strickland; (2) the letter to McEachern, which McEachern said came from Strickland; and (3) evidence of Defendant's telephone conversations with Strickland.

The first two were introduced against Strickland only, and the trial court gave limiting instructions regarding both. "[L]imiting instructions ordinarily eliminate any risk that the jury might have considered evidence competent against one defendant as evidence against the other." *State v. Paige*, 316 N.C. 630, 643, 343 S.E.2d 848, 857 (1986). "It would be unusual for all evidence at a joint trial to be admissible against both defendants, and we often rely on the common sense of the jury, aided by appropriate instructions of the trial judge, not to convict one defendant on the basis of evidence which relates only to the other." *Id.*

Our Courts have previously examined the volume and nature of the evidence admissible against only a joined co-defendant in

determining whether the defendant received a fair trial. *Compare Wilson*, 108 N.C. App. at 589, 424 S.E.2d at 462 (finding a defendant deprived of a fair trial where he was forced to sit through two and one-half days of testimony from eleven witnesses which was not admissible against him), *with State v. Ellison*, 213 N.C. App. 300, 314-15, 713 S.E.2d 228, 238 (2011) (finding no abuse of discretion in joining defendant where evidence inadmissible against one defendant was only "a portion of the testimony provided by two witnesses" and "lasted only a matter of minutes"), *aff'd*, 366 N.C. 439, 738 S.E.2d 161 (2013).  In the present case, the evidence admissible only against Strickland is limited to a few phone conversations Strickland had with Carlos Mahoney and the letter purportedly written by Strickland.  The evidence here was far less than *Wilson* and was also less than that in *Ellison*, as it constituted only a portion of the testimony of one witness, McEachern.

Defendant cites to *Bruton v. United States*, 391 U.S. 123, 127-28 (1968), in which the United States Supreme Court found that the confession of a co-defendant implicating the defendant could not be introduced in a joint trial, even with a limiting instruction.  The Court recognized that in many cases, the jury is expected to follow the limiting instructions and a joined

defendant is not denied a fair trial by the inclusion of evidence inadmissible against him. *Id.* at 135. However, the Court held that in certain circumstances, the risks and consequences are so great that even a limiting instruction cannot ensure a fair trial. *Id.* *Bruton* found those circumstances where the "powerfully incriminating extrajudicial" confession of a co-defendant was put before the jury in a joint trial. *Id.* at 135–36. The Court found that the incriminating statements were "devastating to the defendant" and that their credibility was "inevitably suspect" due to the nature of a confessing suspect having a motive to blame others. *Id.* at 136. Because the evidence was so incriminating and the confession suspect, the Court held that even with a limiting instruction, the defendant had been deprived of a fair trial. *Id.* at 136–37.

The present case lacks the circumstances present in *Bruton*. First, the evidence admitted against Strickland is not a confession or statement to law enforcement, and as such it lacks the "inevitably suspect" nature of the testimony in *Bruton*. In addition, in contrast to *Bruton*, neither the evidence regarding Carlos Mahoney nor the letter to McEachern was "powerfully incriminating" or "devastating" to Defendant.

Defendant argues that the evidence of Strickland's phone conversations with Carlos Mahoney was "highly prejudicial" because Carlos Mahoney was her husband and this evidence "created an additional link for the jury between [Defendant] and the drug scheme." However, the evidence of Defendant's husband being involved did not implicate Defendant. A person is not implicated in a crime merely because their spouse was involved. In addition, in the present case there was abundant evidence admissible against Defendant of her mother's involvement. The "additional link" that her husband was involved was not "powerfully incriminating" or "devastating" to Defendant's case.

Although Defendant suggests in her brief that the letter purportedly from Strickland implied Defendant was upset about McEachern's arrest, nothing in the letter mentions Defendant, and McEachern testified that the letter only incriminated Strickland, not Defendant. This evidence, therefore, did not implicate Defendant at all.

Because the jury received proper limiting instructions, and because the considerations in *Bruton* do not apply, we find Defendant was not deprived of a fair trial where evidence was admitted against Strickland and not against Defendant.

Defendant also argues that testimony regarding her phone conversations with Strickland should not have been admitted because it was hearsay. McEachern's testimony regarding Strickland's phone conversations with Defendant came in as statements by a co-conspirator in furtherance of the conspiracy. The statements were admitted against both Defendant and Strickland. Declarations "made by a party to a criminal conspiracy during the course of and in pursuit of the goals of the illegal scheme" are admissible despite a hearsay objection. *State v. Tilley*, 292 N.C. 132, 138, 232 S.E.2d 433, 438 (1977).

Defendant once again argues that under *Bruton*, McEachern's testimony should not have been admissible. However, as a statement of a co-conspirator in furtherance of the conspiracy, McEachern's testimony regarding Strickland's statements about phone conversations with Defendant would have been admissible against Defendant even if there was no joinder. *State v. Fink*, 92 N.C. App. 523, 528, 375 S.E.2d 303, 306 (1989) (Statements "made during and in furtherance of the conspiracy, would have been admissible against—and as damaging to—each of the defendants whether they were tried separately or jointly."). Since the statements would have been admissible against

Defendant separately, she was not denied a fair trial by their inclusion in the joined trial.

Because Defendant received a fair trial, we find that the trial court did not abuse its discretion in joining Strickland and Defendant for trial.

### IV.   Conclusion

For the foregoing reasons, we find

NO ERROR.

Judges ROBERT C. HUNTER and CALABRIA concur.

Report per Rule 30(e).