IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-179

No. COA20-20

Filed 4 May 2021

Vance County, No. 18 CRS 407, 51157

STATE OF NORTH CAROLINA

v.

MARVIN ELSWORTH CRUDUP

Appeal by defendant from judgment entered 20 December 2018 by Judge Alma Hinton in Vance County Superior Court. Heard in the Court of Appeals 14 April 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Erin E. Gibbs, for the State.*

*Jarvis John Edgerton, IV for defendant-appellant.*

TYSON, Judge.

¶ 1 Marvin Elsworth Crudup ("Defendant") appeals from a judgment entered after a jury found him guilty of felonious breaking and entering, felonious larceny after breaking and entering, and attaining the status of habitual felon. We find no error.

## I. Background

¶ 2 Steven Matthews ("Matthews") received a security notification detecting motion in his living room on 24 April 2018 while he was at work. The camera's

surveillance footage showed a man rummaging through his refrigerator and cabinets, and moving throughout the home. After notifying his supervisor about the intruder, Matthews left work and called 911. Vance County Sheriff's deputies were already on scene when he arrived home. The only item missing was a coffee canister, which Matthews estimated contained approximately $100.

¶ 3        Two days after the break-in, Matthews showed his landlord, Mike Dickerson ("Mr. Dickerson"), the security camera recording of the perpetrator. Mr. Dickerson immediately identified Defendant due to previous incidents. Matthews relayed Defendant's name to Detective Robert Morris ("Detective Morris").

¶ 4        Detective Morris went to Defendant's residence, which is located on the same road as Matthews' home, on 26 April 2018. As Detective Morris approached Defendant's residence, he noticed a bicycle containing an abnormal screwdriver. Detective Morris testified "in the world of investigations," that item was considered to be a burglary tool used to pry open objects. After being unable to get anyone to answer the door, Detective Morris left the residence and returned later. Upon his return, he observed Defendant walking toward the back yard. Detective Morris requested Defendant to come to the Sheriff's station.

¶ 5        At the station, Defendant viewed the security video of the break-in, but insisted the person depicted was not him. Based upon previous interactions, Sergeant Donnie Thomas was able to identify Defendant as the man shown on the

surveillance video. Defendant was subsequently arrested for breaking and entering and breaking and entering with the intent to commit larceny.

¶ 6      Defendant waived his right to appointed counsel on 30 April and again on 18 July of 2018. On 11 June 2018, a grand jury returned a two-count true bill of indictment charging Defendant with breaking and entering, breaking and entering with the intent to commit larceny, and attaining status as a habitual felon. The indictments were mailed to Defendant's residence, but he never received them.

¶ 7      On 26 September 2018, Defendant filed a *pro se* motion to dismiss alleging he had not been served any indictments. The trial court denied Defendant's motion, but ordered Defendant to be served with a formal copy of his indictment. Defendant also signed an Acknowledgment of Rejection and Withdrawal of Plea that day.

¶ 8      Defendant's trial began on 17 December 2018. That same day, a grand jury issued a superseding indictment alleging Defendant had attained the status of habitual felon. Despite the trial court's previous order, the trial judge discovered Defendant had not received a copy of his two-count true bill of indictment. The trial judge ordered Defendant to be escorted from the courtroom and served with the indictment. After receiving the indictment, Defendant stated he was ready to proceed to trial.

¶ 9      After the jury was empaneled on the second day of trial, Defendant requested standby counsel be appointed. The trial judge, seeing only prosecutors present in the

courtroom, denied Defendant's request. Defendant changed into his jail-issued orange jumpsuit and refused to return to the courtroom. For the duration of his trial, Defendant refused to return to the courtroom and participate.

¶ 10 After being unable to gain Defendant's cooperation and return to the courtroom, the trial judge proceeded through trial and allowed the State to present its case. The jury returned a verdict of guilty for felony breaking and entering, felony larceny after breaking and entering, and for Defendant attaining status as a habitual felon on 18 December 2018. The trial court sentenced Defendant as a prior record level VI offender to an active term of a minimum of 128 months to 166 months. Defendant gave notice of appeal in open court.

## II.     Jurisdiction

¶ 11 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2019).

## III.     Issues

¶ 12 Defendant argues the trial court erred by failing to timely "cause notice of the indictment" be provided to him pursuant to N.C. Gen. Stat. § 15A-630 (2019), and by denying his motion for standby counsel with the jury empaneled and trial underway

## IV.     N.C. Gen. Stat. § 15A-630

### A. Standard of Review

¶ 13 Errors of statutory construction are questions of law which this Court reviews

*de novo. State v. Patterson*, 266 N.C. App. 567, 570, 831 S.E.2d 619, 622 (2019). Upon *de novo* review, we consider the matter anew and are free to substitute this Court's judgment for that of the trial court. *Id.*

## B. Analysis

In his first argument of error, Defendant contends the trial court's failure to follow the timely notice requirement of N.C. Gen. Stat. § 15A-630 "undermined his ability to prepare for trial and to knowingly assert or waive his statutory rights to counsel, discovery and arraignment." We disagree.

N.C. Gen. Stat. § 15A-630 provides that:

> Upon the return of a bill of indictment as a true bill the presiding judge must immediately cause notice of the indictment to be mailed or otherwise given to the defendant unless he is then represented by counsel of record. The notice must inform the defendant of the time limitations upon his right to discovery under Article 48 of this Chapter, Discovery in the Superior Court, and a copy of the indictment must be attached to the notice.

N.C. Gen. Stat. § 15A-630. "[T]he Official Commentary of N.C. Gen. Stat. § 15A-630" establishes that the statute is not jurisdictional and was enacted to set the "starting point" of the discovery period. *State v. Williams*, 77 N.C. App. 136, 139, 334 S.E.2d 491, 493 (1985).

"The purpose of an indictment" is to provide defendant with: (1) "notice of the charges against him so he may prepare an adequate defense; and (2) to enable the

court to know what judgment to pronounce in case of conviction." *State v. Wilson*, 108 N.C. App. 575, 584, 424 S.E.2d 454, 459 (1993).

¶ 17        Defendant signed a Waiver of Counsel form on 30 April 2018 acknowledging, "I have been fully informed of the charges against me[.]" The trial court also certified on the Waiver of Counsel that it had fully informed Defendant "of the charges against him[.]" At the hearing on 18 July 2018, the trial court likewise informed Defendant, "you're charged with felonious breaking and entering, felonious larceny after breaking and entering, and having obtained the status of being an habitual felon." On that date, Defendant signed a second Waiver of Counsel. After signing the Waiver of Counsel, the trial court informed Defendant that "the State is free to talk to you now about whatever you want to" and that the State would give him a copy of discovery that day.

¶ 18        On the morning of the first day of trial, the prosecutor told the trial court that "back on July 18th of this year, I provided discovery in court -- the DA's Office provided that to [Defendant], July 18th." The prosecutor specified that "it was a copy of my complete file, so that included the indictment as well[,]" and a copy of the surveillance video in its entirety, but Defendant asserted he had not received the indictments. Also, that morning, a grand jury returned a superseding indictment charging Defendant with attaining the status of habitual felon. Initially, the trial judge had no intention of serving the indictment and trying the case in the same

session. Defendant stated he was ready to proceed to trial, despite being served with

the superseding indictment shortly before. The following colloquy took place:

> THE COURT: All right. And the State is intending to proceed on habitual felon, breaking and/or entering, and larceny after breaking and entering?
>
> [THE STATE]: Yes, Your Honor.
>
> THE COURT: And is seeking to enhance the breaking and entering and larceny with the habitual felon; is that correct?
>
> [THE STATE]: Yes, Your Honor.
>
> THE COURT: And you are proceeding *pro se*, is that correct, [Defendant]?
>
> [DEFENDANT]: Yes, ma'am.

¶ 19        Following this exchange, the trial judge questioned Defendant to ensure that

the Defendant was capable of proceeding *pro se*. When the trial court is satisfied the

defendant is: (1) clearly advised of his right to counsel, (2) understands the

consequences of the decision; and (3) comprehends the charges and range of potential

punishments, a defendant's decision to represent himself must be respected and

upheld, pursuant to N.C. Gen. Stat. § 15A-1242 (2019). *State v. Sorrow*, 213 N.C.

App. 571, 573-74, 713 S.E.2d 180, 182 (2011). At both the July 2018 hearing and on

the first day of trial, the trial court properly performed the foregoing inquiry.

Defendant signed and acknowledged his wavier to counsel in open court and decided

to represent himself.

¶ 20        Although Defendant was not timely served with the indictment, such delay was not jurisdictional, and he has not shown he was prejudicially harmed by the delay.  Defendant was under arrest, in jail, and completely aware of the charges against him.  Defendant was given a copy of the discovery at the July hearing. Defendant filed a motion to dismiss due to the "nonexistence of a True Bill of Indictment," which the trial court dismissed.

¶ 21        Defendant was permitted to view home surveillance footage prior to arrest and trial.  At the motion to dismiss hearing, Defendant stated: "I viewed the video. The individual on the video was not me."  These actions indicate Defendant acknowledged the charges, and he viewed and disagreed with the evidence the State had against him.  Defendant was provided ample opportunity to prepare an adequate defense and denied he was the person shown in the recording.  His arguments are overruled.

## V.    Motion for Standby Counsel

### A. Standard of Review

¶ 22        The trial court's decision to appoint standby counsel rests within its sound discretion.  N.C. Gen. Stat. § 15A-1243 (2019).  We will not disturb a trial court's discretionary ruling "unless the ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision."  *State v. Blakeney*, 352 N.C. 287, 309, 531 S.E.2d 799, 816 (2000) (alterations, citations and quotation marks omitted).

**B. Analysis**

¶ 23        N.C. Gen. Stat. § 15A-1243 provides:

> When a defendant has elected to proceed without the
> assistance of counsel, the trial judge in his discretion may
> appoint standby counsel to assist the defendant when
> called upon and to bring to the judge's attention matters
> favorable to the defendant upon which the judge should
> rule upon his own motion.

N.C. Gen. Stat. § 15A-1243 (2019).

¶ 24        Appointment of standby counsel is a statutory creation, where otherwise

expected counsel's duties are limited by statute, and a defendant "does not benefit

from a typical lawyer-client relationship." *State v. Thomas*, 331 N.C. 671, 677, 417

S.E.2d 473, 478 (1992).

¶ 25        Defendant requested standby counsel for the first time on the second day of

trial, after the jury had been empaneled, and while his trial was well underway.

Defendant's request occurred after he previously and knowingly waived appointment

of counsel twice, stated he was prepared to proceed to trial and participated in the

process of jury selection.  After hearing Defendant's request, the trial judge stated,

"[w]e have now successfully selected a jury with an alternate, empaneled that jury,

and are ready for opening statements . . . seeing no attorneys in the courtroom, other

than prosecutors, that request is denied."  Following a brief recess, Defendant

changed into his orange jail jumpsuit and refused to participate in his trial unless

given standby counsel. After repeatedly trying to bring Defendant back to the courtroom, the trial court proceeded with opening statements with Defendant *in absentia.*

This Court held no error occurred in a trial court's refusal to grant the defendant's request for standby counsel when the defendant proved indecisive in *State v. Brooks*:

> Defendant waived his right to appointed counsel and the record makes it clear that the waiver was knowingly and intelligently made, and that it was granted only after defendant had been informed of the nature of the charges against him and of his right to appointed counsel. Defendant's decision may not have been wise, but it is clear that he had every right to represent himself.
>
> . . . .
>
> The trial court, although not required to make any special effort to accommodate a defendant proceeding *pro se*, showed unlimited patience with the defendant throughout the trial. On one occasion defendant requested standby counsel, and the judge agreed to grant the request, but defendant changed his mind and elected not to use standby counsel. When, a few pages further into the record the defendant again requested standby counsel, it is not surprising that the judge refused. If defendant was not confident of his ability to represent himself, he was entitled to counsel appointed for his defense; but he had no right to standby counsel. The appointment of standby counsel is in the sound discretion of the trial court.

*State v. Brooks*, 49 N.C. App. 14, 18, 270 S.E.2d 592, 595–96 (1980) (alterations, citations, and internal quotation marks omitted).

¶ 27        Here, Defendant persisted in his desire to proceed without the assistance of appointed or retained counsel. Even if the trial court had granted Defendant's standby request, Defendant was still the primary party responsible for presenting his case. Defendant's decision to refuse to continue to participate in his trial appears to be a delaying tactic and is not prejudicial error.

¶ 28        The trial court, within its sound discretion, properly denied Defendant's request, because Defendant was given the opportunity to raise, settle, and waive any questions the day before.

¶ 29        Defendant's bald assertion that he is entitled to a new trial "because the right to counsel is a constitutional right" is both grossly misstated and misplaced. Defendant mischaracterizes the withdrawal of a waiver of counsel with the statutory standard set forth in N.C. Gen. Stat. § 15A-1243. Defendant has failed to show the trial court abused its discretion by denying Defendant's request. Defendant's argument is overruled.

## VI.    Conclusion

¶ 30        The trial court did not commit reversible error by failing to follow the statutory mandate set forth in N.C. Gen. Stat. § 15A-630. Defendant's motion for standby counsel was asserted after multiple waivers of counsel, the jury was empaneled, and after trial commenced. The denial of Defendant's motion rested within the discretion of the trial court. Defendant received a fair trial, free from prejudicial errors. We

find no error in the jury's verdicts or in the trial court's judgment entered thereon. *It is so ordered.*

NO ERROR.

Judges COLLINS and CARPENTER concur.